# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 16, 2013

## STATE OF TENNESSEE v. GINGER ILENE HUDSON STUMP

**Appeal from the Circuit Court for Bedford County**
**No. 17436      F. Lee Russell, Judge**

---

**No. M2012-02723-CCA-R3-CD - Filed September 20, 2013**

---

The Defendant-Appellant, Ginger Ilene Hudson Stump, was indicted by a Bedford County Grand Jury for twenty-six counts of forgery. See T.C.A. § 39-14-114 (Supp. 2011). Pursuant to her plea agreement, Stump entered guilty pleas to six Class E felonies (counts 3, 7, 11, 13, 17, 19) involving more than $500 but less than $1,000 and one Class D felony (count 25) involving $1,000 or more but less than $10,000, with the trial court to determine the length and manner of service of the sentences. As a part of this agreement, the State dismissed the remaining nineteen forgery counts. Following a sentencing hearing, the trial court sentenced Stump as a career offender to twenty-four years in the Tennessee Department of Correction. On appeal, Stump argues that the trial court abused its discretion in denying her an alternative sentence and in denying her a community corrections sentence. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and ROGER A. PAGE, JJ., joined.

District Public Defender, Donna Orr Hargrove, Lewisburg, Tennessee; Assistant Public Defender, Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the Defendant-Appellant, Ginger Ilene Hudson Stump.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Charles Frank Crawford, Jr., District Attorney General; and Richard A. Cawley, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Plea Submission Hearing.** At the September 20, 2012 plea submission hearing, the State summarized the facts supporting Stump's guilty pleas:

Sometime last year, it was believed that Mr. Stephen Stump and/or Mrs. Ginger Stump went into a Play It Again Sports in Florida where they sold some items to Play It Again Sports and were given a check for those items by Play It Again Sports. They then took that check and altered the checks to say . . . S & J Hauling, I believe it was, or a J & J Hauling is what they made it, but . . . they left the tracking number as the same.

So, they simply changed, altered the business'[s] name, but left the tracking numbers the same. So, then they [came] to Tennessee, and we would show, then, Your Honor, that on February the 23rd of 2012, Mrs. Stump took one of these altered checks into, on that particular day, Kroger and wrote a check, and filled that check out, put her name on it, and passed it at Kroger for the value of $496.14.

The State would then show that on March the 8th of 2012–okay, the check number on this one is 1534, Mrs. Stump went into United Grocery Outlet and passed one of those checks, the altered checks, to the amount of $265. Then on March the 12th, check number 1565 was given to Kincaid's Furniture here in Shelbyville for $960.20. . . .

. . . .

Then Count 13, the State would say that on March the 13th, for check number 1566, Mrs. Stump took one of the altered checks and passed it at Bedford Urgent Care in the amount of a hundred and fifty dollars. Count 17, on March the 14th, check number 1555, one of the altered checks, was passed at Roses for $299.79. And then on Count 19, on March the 15th, check number 1660, check was, one of the altered checks, was passed at Wal-Mart for $265.76. And then on March the 24th, check number 1639 was passed, one of the altered checks, was passed at First Automotive for $5,873.94.

I will say that all those locations, while I didn't specifically go through them, are all located here in the city of Shelbyville, Your Honor. And that after the interview, the police went to Mr. Stump's and Mrs. Stump's residence over in Moore County, and most of . . . the stuff, like the cars and the furniture

that was purchased at Kincaid's, was located at their home and actually returned to the businesses.

The trial court accepted Stump's guilty pleas to six Class E felonies and one Class D felony.

**Sentencing Hearing.** At the November 1, 2012 sentencing hearing, the State admitted the presentence investigation report, which showed that Stump's criminal history consisted of at least seven felony convictions and over fifty misdemeanor convictions.

Joyce Reed, the presentence report investigator, testified that Stump's prior conviction for obtaining property with worthless checks, for which Stump received a one-year sentence, was a felony based on the records she had received from the Polk County Circuit Court in Florida. She also stated that Stump's prior convictions for passing worthless checks, for which she received sentences of six months, were misdemeanors.

The trial court, noting that Stump had at least six state felony convictions and one federal felony conviction, determined that she was a career offender. See id. § 40-35-108 (Supp. 2011). The court then applied to all of her convictions mitigating factor (1), that the offenses did not involve any danger of serious bodily injury, but noted that it "did not give that [factor] significant weight." See id. § 40-35-113(1) (Supp. 2011). It also applied enhancement factor (1), that the defendant had a history of criminal convictions or criminal behavior, in addition to that necessary to establish her range, and factor (8), that the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community, to Stumps convictions. See id. § 40-35-114(1), (8) (Supp. 2011). In applying factor (8), the court noted that Stump's probation in previous cases had been revoked eight times. After applying these mitigating and enhancement factors, the court sentenced Stump to the maximum sentences in the range, six years for each of the Class E felonies and twelve years for the Class D felony. See id. § 40-35-108(c), -112(c)(4), (5) (Supp. 2011).

The court, in determining whether the sentences would be served concurrently or consecutively, found that Stump had "an extremely extensive criminal record" and that she was "a professional criminal" who was "making her living" from her criminal acts. See id. § 40-35-115(b)(1), (2) (Supp. 2011). Ultimately, the court divided the six Class E felonies into two groups of three convictions and imposed concurrent sentencing within the groups and ordered the two groups served consecutively to one another for a total of twelve years. Then the court ordered the Class D felony served consecutively to the other sentences for an effective sentence of twenty-four years.

The trial court also determined that Stump was "[a]bsolutely not" a good candidate for alternative sentencing. First, it found that confinement was necessary to protect society because Stump had a long history of criminal conduct. See id. § 40-35-103(1)(A) (Supp. 2011). The court specifically noted that Stump had "an extremely extensive criminal record over a long period of time, repeating the same crimes over and over again to a major degree." The court also found that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to Stump. See id. § 40-35-103(1) (C) (Supp. 2011). It was undisputed that Stump had several probation revocations on her record. The court held that Stump's criminal history and her probation revocations made her an extremely poor candidate for rehabilitation:

> I find that she is a very poor prospect to live within the terms of her release into the public. She has essentially a zero potential for rehabilitation, because of the number of convictions over the time period and also because of at least eight revocations, which I have previously described in the record.

At the conclusion of the hearing, the trial court sentenced Stump to twenty-four years in the Tennessee Department of Correction.

## ANALYSIS

Stump argues that the trial court abused its discretion in denying her a probationary sentence or an alternative sentence. First, she contends that she is entitled to probation because she received six-year sentences for her Class E felony convictions and a twelve-year sentence for her Class D felony conviction and because she does not fall within the parameters of Tennessee Code Annotated section 40-35-102(5) (Supp. 2011). Second, she argues that the circumstances of the case did not warrant the denial of a sentence of probation and that there was no evidence showing that a sentence of confinement would deter others in the jurisdiction from committing similar criminal acts. Third, she argues that probation would be in the best interests of the defendant and the public because her continued employment would allow her to pay her outstanding debts. Stump also argues that the trial court abused its discretion in denying her a community corrections sentence because her offenses were non-violent and stemmed from "her addiction and her lack of job skills."

The State responds that Stump is not eligible for probation because her sentence is not ten years or less. See id. § 40-35-303(a) (Supp. 2011). It also asserts that Stump's extensive history of probation revocations precluded a probationary sentence in this case. The State does not explicitly address Stump's claim that she should have received a community corrections sentence. Upon review, we conclude that the trial court did not abuse its discretion in denying all forms of alternative sentencing in this case.

Pursuant to the 2005 amendments to the Sentencing Act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b) (Supp. 2011). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (Supp. 2011), Sentencing Comm'n Comments.

Because of the broad discretion given to trial courts by the 2005 amendments to the Sentencing Act, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In addition, this standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, Stump has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the trial court's sentence in this case. Id. at 280.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (Supp. 2011) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-

35-102(6)(A). T.C.A. § 40-35-102(6)(D) (Supp. 2011). We note that even though Stump was convicted of one Class D felony and six Class E felonies, she was not considered a favorable candidate for alternative sentencing because the trial court properly determined that she was a career offender. See id. § 40-35-102(6)(A).

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Tennessee Code Annotated section 40-35-102(5) gives courts guidance regarding the types of defendants who should be required to serve their sentences in confinement:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. Id. (citing T.C.A. § 40-35-303(b)).

Stump argues that the trial court abused its discretion in denying her a sentence of full probation. Although Stump was ineligible for probation for the twelve-year sentence she received for her Class D felony, she was eligible for probation for each of her Class E felonies, despite the State's arguments to the contrary, because each sentence was ten years or less and because these offenses were not specifically excluded by statute. See T.C.A. §

40-35-303(a); State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986) (concluding that a defendant is eligible for probation if each of the sentences is ten years or less regardless of the effective sentence). Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. T.C.A. § 40-35-303(b) (Supp. 2011). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4) (Supp. 2011). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5) (Supp. 2011).

Here, the trial court properly denied all forms of alternative sentencing and imposed a sentence of confinement after determining that Stump had a long history of criminal conduct and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to her. See id. § 40-35-103(1)(A), (C). The presentence report showed that Stump's criminal history consisted of at least seven felonies, over fifty misdemeanors, at least eight probation revocations, which placed her squarely within the parameters of Tennessee Code Annotated section 40-35-102(5). In considering alternative sentencing, the court noted that Stump was not a good candidate for probation, stating that she had "zero potential for rehabilitation, because of the number of convictions over the time period and also because of at least eight [probation] revocations[.]" Stump, who presented no proof at the sentencing hearing, failed to establish her suitability for probation. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, we uphold Stump's sentence of twenty-four years in the Tennessee Department of Correction. See Caudle, 388 S.W.3d at 280.

Stump also argues that the trial court abused its discretion in denying her a community corrections sentence. As we previously noted, Stump was not considered a favorable candidate for alternative sentencing because she was a career offender. See T.C.A. § 40-35-102(6)(A). Despite this, Stump maintains that she should have received a community corrections sentence in this case.

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Id. § 40-36-103(1) (Supp. 2011). Eligible offenders under the Community Corrections Act include:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Id. § 40-36-106(a)(1)(A)-(F) (Supp. 2011). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36-106(d) (Supp. 2011).

In this case, the trial court properly denied all forms of alternative sentencing based on Stump's extensive criminal record and her inability to abide by probationary sentences in the past, which made her a poor candidate for rehabilitation. See id. § 40-35-103(1)(A), (C).

Stump claims the trial court abused its discretion in denying her a community corrections sentence because her offenses were non-violent and stemmed from "her addiction and her lack of job skills." Although Stump asserted in the presentence report that she had abused "meth" from age twenty to twenty-four and from December of 2011 to March of 2012 and that she had completed an alcohol and drug treatment program while incarcerated for other convictions in Florida, Stump presented no proof showing that her drug abuse contributed to her criminal conduct in this case. Upon review, we conclude that the trial court did not abuse its discretion in denying all forms of alternative sentencing and in imposing a sentence of confinement in this case. Accordingly, we affirm the effective twenty-four-year sentence in the Tennessee Department of Correction.

## CONCLUSION

The trial court's judgments are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE