# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 14, 2013

## STATE OF TENNESSEE v. JEFFERY DESHAWN MITCHELL

**Appeal from the Circuit Court for Marshall County**
**Nos. 12-CR-136, 12-CR-137, 12-CR-138, 12-CR-139    Robert G. Crigler, Judge**

_____

**No. M2013-00265-CCA-R3-CD - Filed December 4, 2013**

_____

The Defendant-Appellant, Jeffrey Deshawn Mitchell, entered guilty pleas in Case No. 12-CR-136 to sale of a counterfeit substance, which he represented to be cocaine (count 1) and delivery of a counterfeit substance (count 2); in Case No. 12-CR-137 to sale of less than .5 grams of cocaine base (count 1) and delivery of less than .5 grams of cocaine base (count 2); in Case No. 12-CR-138 to sale of less than .5 grams of cocaine base (count 1) and delivery of less than .5 grams of cocaine base (count 2); and in Case No. 12-CR-139 to possession with the intent to sell .5 grams or more of cocaine base (count 1), possession with intent to deliver .5 grams or more of cocaine base (count 2), resisting arrest (count 3), and evading arrest (count 4). The plea agreement stated that the length and manner of sentencing in these cases would be determined by the trial court, and the trial court sentenced Mitchell as a Range I, standard offender to an effective sentence of seventeen years in confinement. On appeal, Mitchell argues that his sentence is excessive. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

James R. Frazier, for the Defendant-Appellant, Jeffery DeShawn Mitchell.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Robert Carter; District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## FACTS

**Plea Submission Hearing.** At the November 7, 2012 plea submission hearing, the State summarized the facts supporting Mitchell's guilty pleas:

> Starting first with case number 12-CR-136, those events occurred on October 13, 2010. It was a controlled buy. It was preceded by a recorded telephone call between a confidential informant [(CI)] and the defendant, that was recorded and monitored by agents of the Drug Task Force.
>
> The agents then conducted a search of the confidential informant to make sure the confidential informant was not in possession of anything that would taint a controlled buy.
>
> The arrangement was made that the defendant would come to a residence the CI was located at. The defendant was then observed driving to that location.
>
> The CI was observed walking outside, interacting with the defendant, whereupon the CI handed $100 to the defendant and received crack cocaine in exchange.
>
> The CI returned inside, handed it over to the Task Force agents. They noticed that it appeared to be a very small quantity, given it was a $100 buy. They actually had the CI call the defendant and complain about the weight, and the defendant offered some explanation about that he had acquired it from someone else, and et cetera.
>
> It was sent to the lab, and it weighed .4 of a gram.
>
> In case number [12-CR-]137, this event occurred on November 18, 2010. Again, it was preceded by a recorded and monitored telephone call between the CI and the defendant about purchasing crack cocaine. It was agreed to.
>
> Again, the same scenario would be repeated. The defendant would come to the residence where the CI was located. The CI would come outside

and purchase the crack cocaine from the defendant. That is exactly what happened.

The defendant was observed driving to that residence. The CI was observed going outside. They interacted, and the CI handed $100 to the defendant. The defendant handed back several baggies of suspected crack cocaine. The CI turned those over to the Task Force agents.

The individual weights, because there were, I think, four baggies were: .09; .1; another .1; and another .1. That adds up to just 1/100 of a gram less than .4 of a gram, so I guess that is 3.99 grams–or excuse me–.39 grams, so 1/100 of a gram less than .4.

Case number [12-CR-]138 occurred on January 5, 2011. Again, you had recorded and monitored telephone calls between the defendant and the CI about the defendant coming to the residence, where the CI was located.

The defendant was observed going to that location. The CI was observed going outside. The CI handed the money to the defendant. The defendant handed crack cocaine to the CI. The CI went back inside and handed that to the Task Force agents.

In this case it weighed .2 grams.

Lastly, in case number [12-CR-]139, those events occurred on May 3, 2012.

The agents of the Task Force had information about the defendant, that he was currently involved in selling crack cocaine from the parking lot of the rec center here in Lewisburg. They went to that location.

They also had a description of the vehicle. As they were getting to that location, they observed the vehicle leaving the rec center. They wound up conducting a traffic stop of the vehicle. The defendant was a passenger in the vehicle.

The stop, I will tell you, is on videotape. I believe they requested that the defendant step out of the vehicle. They explained that he was going to be pat[ted] down.

I will tell you, the officers also smelled burnt marijuana coming from the vehicle. I think they talked with both the driver and the defendant about whether they had just smoked marijuana.

Outside the vehicle, it was explained the defendant was going to be pat[ted] down. And I believe before that process could actually begin, the defendant took off running. At this point, he disappears from the view of the camera.

Of course, the two agents of the Drug Task Force immediately go on pursuit and they deploy their Tazer, which does strike the defendant. He falls to the ground at that point. They get on top of him, of course, trying to now arrest him.

He did continue to resist that effort momentarily, but ultimately they were able to take–or get control of him, get him handcuffed, take him into custody.

They did search him after that and found $181 in cash; and crack cocaine which was sent to the lab that weighed 1.61 grams.

**Sentencing Hearing.** At the December 19, 2012 sentencing hearing, the State admitted the presentence investigation report and acknowledged that Mitchell was a Range I, standard offender. The presentence report showed that Mitchell's criminal history included several misdemeanor convictions, including two convictions for driving on a suspended, cancelled, or revoked license, two convictions for violating the seat belt law, and convictions for criminal trespass, evading arrest, theft of property valued at less than $500, simple assault, and violating the insurance law. The report also showed that Mitchell had received probation at least eight times in the past and had violated the terms of his probation at least three times. Moreover, the report showed that Mitchell had been released on bond for the offenses in Case Nos. 12-CR-136 and 12-CR-137 when he committed the offenses in Case No. 12-CR-139.

Crystal Gray, the probation and parole officer who prepared Mitchell's presentence report, testified that Mitchell was twenty-two years old at the time she completed his report. She stated that Mitchell made the following statement to her that was included in the report: "My offense is the sell [sic] of drugs and possession. I did this at the time because lack of not having a job at the time. I was only trying to help my family which is my mom and sister, and kids."

-4-

Gray stated that Mitchell had been serving a probationary sentence for an unrelated theft conviction when he committed the offenses in Case Nos. 12-CR-136 and 12-CR-137. She also confirmed that Mitchell was serving several probationary sentences for unrelated convictions when he committed the offenses in Case No. 12-CR-139. Specifically, Mitchell was serving a probationary sentence for evading arrest when he committed the offense of evading arrest in count 4 of Case No. 12-CR-139.

Although Mitchell told Gray that he was not affiliated with a gang, Officer John Christmas of the Lewisburg Police Department informed Gray that the police had listed Mitchell as a suspected member of the Vice Lords gang. Although Mitchell had been charged with several offenses involving cocaine at the time of her report, he denied using cocaine and asserted that he only sold it. Mitchell admitted that he began using marijuana and alcohol when he was fourteen years old and last used marijuana in May 2012 prior to his arrest.

Gray noted that Mitchell had committed two offenses as a juvenile which would have been felonies if he had committed them as an adult. These juvenile offenses included a September 20, 2005 adjudication for aggravated robbery and an August 3, 2006 adjudication for aggravated burglary. Gray stated that Mitchell had also been convicted of several misdemeanors as a juvenile, including simple possession of marijuana, theft of property valued at less than $500, and possession of tobacco on school property.

Gray said that Mitchell reported that he had two children for whom he did not pay child support. She stated that Mitchell had been employed at Lewisburg Printing but was fired when he tested positive for marijuana. She also stated that he had been hired and then laid off several times from Cosmolab. She said Mitchell worked for Shoney's restaurant but lost that job when he was returned to the State's custody.

Shane Daugherty, a lieutenant with the Drug Task Force, testified that he assisted in arresting Mitchell for the offenses in Case No. 12-CR-139 after Mitchell attempted to evade the police. Once Mitchell was taken into custody, Lieutenant Daugherty recovered a bag containing 1.6 grams of crack cocaine or cocaine base. Lieutenant Daugherty stated that use and sale of crack cocaine posed a high risk to human life and that approximately 200 of the more than 300 drugs cases in the judicial district involved cocaine or crack cocaine. He asserted that confinement deterred individuals from committing offenses involving crack cocaine. Lieutenant Daugherty said he believed, based on his own observations, that Mitchell was a member of "The Conservative Vice Lords," the largest gang in Lewisburg, Tennessee. He stated that the members of this gang supported themselves and their families by selling illegal drugs.

John Christmas, an officer with the Lewisburg Police Department, testified that he had extensive experience in investigating gangs. He determined, based on his own investigation, that Mitchell was "a low-ranking soldier" or "enforcer" member of the "Vice Lords" gang. He said that enforcer members usually worked for the gang and committed violence against non-members or members who had violated one of the gang's bylaws. Using the point-scale system employed by state and federal agencies that concludes that individuals receiving a score of "10" or more are in a gang, Officer Christmas stated that Mitchell received a score of "17." He identified a photograph, entered into evidence, of Mitchell and three other individuals, all of whom were confirmed members of the Vice Lords gang. In it, Mitchell was displaying the Vice Lords' hand sign.

Mitchell, the Defendant-Appellant, testified that he had matured and changed his ways since he committed the offenses in this case. He said that if the court were to grant him a Community Corrections sentence, he could work at his uncle's car-detailing business. Mitchell said he had received seven months of training as an auto body mechanic at the Nashville Auto Diesel College but had quit before completing the thirteen-month course because his girlfriend, Adrika O'Neal, had become pregnant with their first child. Mitchell attributed his juvenile offenses to the bad company that he kept at the time. Although he stated that he never used cocaine or crack cocaine, he admitted that he smoked marijuana four or five times a week until his incarceration in May 2012. He stated that he would willingly participate in a drug rehabilitation program if he were granted an alternative sentence.

Mitchell denied that he was a member of the Vice Lords gang. When Mitchell was shown the photograph identified by Officer Christmas, he claimed that although he knew "Semo," another man in the photograph, they were not friends. Mitchell stated that he did not know that "Semo" held a high position in the Vice Lords gang. He also denied knowing that the other two men in the picture were members of the Vice Lords gang. He claimed that he was intoxicated and just having fun when he made the Vice Lords' hand sign in the photograph.

Mitchell stated that he had been in a relationship with Adrika O'Neal, the mother of his two children, for eight years and that they lived together. He claimed he was a good father and that although there was no order requiring him to pay child support, he financially supported his children.

Adrika O'Neal, Mitchell's girlfriend and the mother of his two children, testified that Mitchell lived with her most of the time. She stated that Mitchell was a good father who provided for his children. She acknowledged that she "sort of kind of knew" that he was selling drugs and that Mitchell refused to listen to her when she told him to stop. O'Neal

stated that she would help Mitchell fulfill his obligations if he received probation or a Community Corrections sentence. She stated that she was not aware of Mitchell belonging to a gang.

The trial court determined that Mitchell was a Range I, standard offender. See id. § 40-35-105. The court applied enhancement factor (1), that the defendant had a history of criminal convictions or criminal behavior, in addition to that necessary to establish his range. See T.C.A. § 40-35-114(1). The court noted that although Mitchell had not been convicted of any felonies as an adult, he had been convicted of numerous misdemeanors as an adult, including two convictions for driving on a suspended, cancelled, or revoked license, two convictions for violating the seat belt law, and convictions for criminal trespass, evading arrest, theft of property valued at less than $500, simple assault, and violating the insurance law. The court also noted that Mitchell's admission of regular drug use supported the application of factor (1). The court also applied enhancement factor (8), that the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. See id. § 40-35-114(8). In applying this factor, the court also noted that Mitchell had violated his probation three times in the past for failing to report to court or failing to pay fines, fees, or costs. The court applied enhancement factor 13(A), that at the time the defendant committed the felony for which he was convicted, he had been released on bail. See id. § 40-35-114(13)(A). It stated that although factor (13)(A) did not apply to Case No. 12-CR-136, it would apply to the other three cases. In addition, the court applied enhancement factor 13(C), that at the time the defendant committed the felony for which he was convicted, he had been released on probation. See id. § 40-35-114(13)(C). The court noted that Mitchell was on probation for misdemeanor theft in Case No. 2009-CR-1862 at the time he committed all of the offenses in this case. The court also noted that Mitchell was on probation for a simple assault conviction at the time that he committed the offenses in Case No. 12-CR-139. Finally, the court applied enhancement factor (16), that the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. See id. § 40-35-114(16). The court noted that Mitchell had committed two offenses as a juvenile, attempted aggravated robbery and aggravated burglary, which would have been the felonies if he had committed them as an adult. It also applied the "catch-all" mitigating factor that Mitchell had entered guilty pleas to the offenses in this case. See id. § 40-35-113(13).

At the conclusion of the hearing, the trial court in Case No. 12-CR-136 merged count 2 with count 1 and sentenced Mitchell to one year and six months for the conviction for sale of a counterfeit controlled substance, a Class E felony. See id. § 40-35-112(a)(5). In Case No. 12-CR-137, the trial court merged count 2 with count 1 and sentenced Mitchell to four years and six months for his conviction for sale of a Schedule II drug, a Class C felony. See id. § 40-35-112(a)(3). In Case No. 12-CR-138, the trial court merged count 2 with count 1

and sentenced Mitchell to five years for the conviction for sale of a Schedule II drug, a Class C felony. See id. In Case No. 12-CR-139, the trial court merged count 2 with count one and sentenced Mitchell in count 1 to eleven years for his conviction for possession with intent to sell a Schedule II drug, a Class B felony; in count 3 to six months at seventy-five percent for his conviction for resisting arrest, a Class B misdemeanor; and in count 4 to eleven months and twenty-nine days at seventy-five percent for his conviction for evading arrest, a Class A misdemeanor. See id. § 40-35-112(a)(2).

We note that there was some confusion in the record regarding the particular offenses for which Mitchell had been released on bond when he committed other offenses in this case. However, based on the record, Mitchell was released on bond in Case Nos. 12-CR-136 and 12-CR-137 when he committed the offenses in Case No. 12-CR-139. Accordingly, pursuant to Tennessee Rule of Criminal Procedure 32(c)(3), Case No. 12-CR-139 must be served consecutively to Case Nos. 12-CR-136 and 12-CR-137. The court also ordered that Case Nos. 12-CR-136 and 12-CR-137 be served consecutively to one another, which is supported by Tennessee Code Annotated sections 40-35-115(b)(1), (2), (6). Because of the court's imposition of consecutive sentencing, Mitchell received an effective sentence of seventeen years. The trial court determined that this sentence was justly deserved based on the seriousness of the offenses and that the sentence was no greater than that deserved for the offenses committed. See id. § 40-35-102(1), -103(2).

Regarding alternative sentencing, the court found that confinement was necessary to protect society because Mitchell had a long history of criminal conduct. See id. § 40-35-103(1)(A). The court noted that although Mitchell had no prior felony convictions as an adult, he had been convicted of four felonies in this case. The court also noted that Mitchell's juvenile record, which included two offenses that would have been felonies if he had committed them as an adult and included numerous misdemeanor convictions, weighed against the grant of alternative sentencing or a sentence of split confinement. In addition, the court found that confinement was necessary to avoid depreciating the seriousness of the offense or was particularly suited to provide an effective deterrence to others likely to commit similar offenses. See id. § 40-35-103(1)(B). The court specifically accredited Lieutenant Daugherty's testimony regarding the prevalence of cocaine offenses in the district and the fact that incarceration deterred individuals from committing offenses involving crack cocaine. Lastly, the court found that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to Mitchell. See id. § 40-35-103(1)(C). The record showed that Mitchell had been granted probation multiple times in the past and had violated the terms of his probation at least three times. Regarding Mitchell's potential for rehabilitation, the court noted that Mitchell had "a job and had a chance at one point probably to be a productive working person" but "didn't do it" because he was fired from that job for testing positive for marijuana.

**ANALYSIS**

Mitchell argues that his sentence is excessive. Specifically, he asserts that the trial court improperly applied enhancement factors (1) and (8) and that the trial court failed to consider the principles of sentencing and arguments as to sentencing alternatives as required by Tennessee Code Annotated section 40-35-210(b)(3). Mitchell asks that this court reduce his sentence in count 1 of Case No. 12-CR-139 to eight years and grant him Community Corrections sentences, probation, or split confinement for all of his convictions. The State responds that the sentences in this case were proper because the trial court imposed within-range sentences consistent with the purposes and principles of the Sentencing Act. We agree with the State.

We note that the 2005 amendments to the sentencing act "served to increase the discretionary authority of trial courts in sentencing." State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In light of this broader discretion, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Id. at 706. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This abuse of discretion standard of review also applies to a trial court's decision regarding "probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d), Sentencing Comm'n Comments. In determining the

proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102, -103. In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006).

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2006); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Tennessee Code Annotated section 40-35-102(5) gives courts guidance regarding the types of defendants who should be required to serve their sentences in confinement:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477

(Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). Although Mitchell was eligible for probation for his convictions in Case Nos. 12-CR-136, 12-CR-137, and 12-CR-138, he was ineligible for probation for count 1 in Case No. 12-CR-139 because his sentence exceeded ten years. See id.; State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986) (concluding that a defendant is eligible for probation if each of the sentences is ten years or less regardless of the effective sentence). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2006). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (2006), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted). When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)).

Mitchell argues that the trial court erred in applying enhancement factor (1), that the defendant had a history of criminal convictions or criminal behavior, in addition to that necessary to establish his range, because he had no felony convictions as an adult and most of his misdemeanor convictions involved traffic offenses. See T.C.A. § 40-35-114(1). Aside from Mitchell's extensive juvenile record, the trial court properly applied enhancement factor (1) based on his extensive history of misdemeanor convictions as an adult, which included two convictions for driving on a suspended, cancelled, or revoked license, two convictions for violating the seat belt law, and convictions for criminal trespass, evading arrest, theft of property valued at less than $500, simple assault, and violating the insurance law. Moreover, the trial court properly applied enhancement factor (1) based on Mitchell's admission that he regularly smoked marijuana until his incarceration in this case.

Mitchell also argues that the trial court erred in applying enhancement factor (8), that the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. See id. § 40-35-114(8). Although Mitchell

-11-

acknowledges that he violated his probation for misdemeanor convictions when he was between the ages of eighteen and twenty, he claims that these violations stemmed from his failure to report to court and pay his fines and costs rather than new charges. We conclude that the trial court properly applied enhancement factor (8) because the evidence showed that Mitchell failed to abide by the terms of his probation, regardless of the nature of the terms.

Finally, Mitchell contends that the trial court failed to consider the principles of sentencing and arguments as to sentencing alternatives as required by Tennessee Code Annotated section 40-35-210(b)(3). He asserts that "[t]he imposition of sentences must bow to the reality that the [S]tate does not have sufficient prison facilities to accommodate all persons who, accordingly to traditional concepts of punishment, would be incarcerated." He argues that he was eligible for alternative sentencing pursuant to Code section 40-35-303(a), because the offenses for which he was sentenced were not specifically excluded by statute. Although he acknowledges that he was not considered as a favorable candidate for alternative sentencing for his Class B felony conviction, he argues that alternative sentencing was still an available option. Lastly, he asserts that an alternative sentence was appropriate because he was "candid and honest" with the trial court, entered guilty pleas rather than presenting a "frivolous defense," accepted responsibility for his actions, and requested an opportunity to "straighten out his life and assume family responsibilities."

Here, the trial court properly imposed within-range sentences for all of Mitchell's convictions. See id. § 40-35-112(a). It then properly imposed sentences of confinement after determining that Mitchell had a long history of criminal conduct, that confinement was necessary to avoid depreciating the seriousness of the offense or was particularly suited to provide an effective deterrence to others likely to commit similar offenses, and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to him. See id. § 40-35-103(1)(A)-(C). The presentence report showed that Mitchell's criminal history consisted of two offenses as a juvenile that would have been felonies if Mitchell had committed them as an adult, at least nine misdemeanors as an adult, and at least three probation revocations, which places him squarely within the parameters of Tennessee Code Annotated section 40-35-102(5). Moreover, Mitchell failed to establish his suitability for probation at the sentencing hearing. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, we uphold Mitchell's sentence of seventeen years in the Tennessee Department of Correction. See Caudle, 388 S.W.3d at 280.

## CONCLUSION

The trial court's judgments are affirmed.

_____

CAMILLE R. McMULLEN, JUDGE