STATE of Tennessee, Plaintiff-Appellee,

v.

Wanda Gail LANGSTON,
Defendant-Appellant.

Supreme Court of Tennessee,
at Knoxville.

April 28, 1986.

Jerrold L. Becker, Knoxville, for defendant-appellant.

Kathy Principe, Asst. Atty. Gen., Nashville (W.J. Michael Cody, Atty. Gen., of counsel), for plaintiff-appellee.

## OPINION

BROCK, Chief Justice.

In this criminal case the trial court granted probation to the defendant but the Court of Criminal Appeals in a 2 to 1 decision reversed the judgment of the trial court granting probation and held that the defendant was not eligible to be considered for probation under the controlling statute, T.C.A., § 40–35–303(a), which provides:

"A defendant shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is 10 (ten) years or less."

In the instant case, the defendant pled guilty to the following offenses and received the following sentences, to wit: simple robbery, nine years; four counts of forgery of an instrument not exceeding $200.00, three years for each count; food stamp fraud, not more nor less than one year; and fraud in obtaining aid for dependent children (AFDC), not more nor less than one year. The sentences for the forgeries and frauds were to be served concurrently with each other but consecutively with the robbery sentence. Under T.C.A., § 40–20–111(b), it was mandatory that the sentence for the robbery be thus made consecutive to the other sentences because the defendant had been released on bail one day prior to the commission of the robbery and was on bail at the time the robbery was committed. As a result, the effective total of the sentences was twelve years, that is, nine years for the robbery plus three years total for the forgery and fraud offenses.

The State argued in the trial court that T.C.A., § 40–35–303, rendered the defendant ineligible for consideration for probation because the total term of imprisonment resulting from the multiple convictions was twelve years and thus that the "sentence actually imposed" was not "ten years or less." The trial court treated each offense and the punishment therefor separately and determined that since none of the sentences imposed upon the defendant was more than ten years she was eligible to be considered for probation under the statute. Considering defendant's case on the merits, the trial court determined that she should be granted probation and entered a judgment accordingly. He granted to the defendant credit for 50 days already served and ordered her to serve an additional 40 days, with the rest of her sentences (eleven years and nine months) suspended.

The Court of Criminal Appeals, however, reversed the trial court's decision, holding that a different construction should be given to T.C.A., § 40–35–303(a). The majority considered that the statute was unclear with respect to "the effect on probation eligibility of a discretionary consecutive sentencing order where multiple sentencing growing out of separate cases total less than ten years individually but more than ten years in the aggregate." However, because the trial court was required by T.C.A., § 40–20–111(b), to order the robbery sentence to be served consecutively to the forgery sentences because the defendant had been on bail at the time the robbery was committed, the minimum sentence that could be imposed was not nine but twelve years, obviously more than the limit set by T.C.A., § 40–35–303(a). Under such a construction of the statute the defendant upon these facts was held to be ineligible for probation. The majority emphasized that it was making no determination of what the result would be if the consecutive sentencing had not been mandatory but merely discretionary.

Judge Byers concurred separately because he disagreed with the majority's interpretation of the statute. He considered that the legislation referred to "individual offenses with individual sentences without adding the sentences in cases of multiple crimes." Nevertheless, he agreed with the result reached because he was of opinion that on the merits the defendant was not entitled to probation and that the trial court had abused its discretion in granting probation to her.

█ Our research of the debates accompanying the passage of this statute, The Criminal Sentencing Reform Act of 1982, fails to shed any light on the meaning of the words "if the sentence actually imposed upon defendant is ten (10) years or less."

We note, however, that cases applying the prior law governing probation eligibility (now T.C.A., § 40–21–101), seem to have considered multiple convictions for different offenses handed down on the same day as giving rise to separate sentences and separate convictions for the purpose of determining probation eligibility. *See, e.g., State v. Burris,* Tenn.Crim.App., 598 S.W.2d 813 (1980); *Scott v. State,* Tenn. Crim.App., 560 S.W.2d 922 (1977).

The decision in *United States v. Henry,* 709 F.2d 298 (5th Cir.1983), although not factually in point, is nevertheless instructive in determining the meaning of the word "sentence." In that case the Court dealt with the meaning of the word "sentence" as contained in Rule 35, Federal Rules of Criminal Procedure, which provides that a "court may correct an illegal sentence at any time." Conflicting interpretations of the word "sentence" somewhat similar to those proposed before us in the instant case were offered. The government argued that "sentence" embraced "the entire aggregate of the prison terms imposed upon a defendant" while the defendant argued that "sentence" means "a specific penalty imposed for a specific statutory offense." We quote from that opinion as follows:

" 'A sentence in a criminal case,' according to the usual understanding, 'is the action of the Court fixing and declaring the legal consequences of predetermined

guilt of a criminal offense.' Citing *Barnes v. United States*, 223 F.2d 891, 892 (5th Cir.1955) (citing 24 C.J.S. *Criminal Law*, § 1556). And a federal 'offense,' in turn, 'means any criminal [act] ... which is in violation of an Act of Congress and is triable in any court established by Act of Congress.' [18 U.S.C., § 3172 (1976).] Whether in the Speedy Trial Act or in any other context, a federal 'sentence' is *not* general or transactional. It is the *specific* consequence of a *specific* violation of a *specific* federal statute.

\* \* \* \* \* \*

"Experts in criminology, moreover, use the terms 'sentence' in the same way, i.e., as the specific consequence of a specific statutory violation. The idea of a 'transactional' type of sentence rarely appears. The following passage from a standard text in the field is typical: 'Under the common law, a court has power to impose cumulatively sentences on conviction of several offenses charged in separate indictments, with imprisonment for one commencing at the termination of imprisonment for the other.' S. Rubin, *The Law of Criminal Correction* § 21, at 481 (2d ed.1973)." 709 F.2d at 310, 311.

The majority in *Henry* thus held that "sentence" as used in the Rule referred to one specific sentence for one specific crime. We agree with the view expressed in *Henry* that "sentence" normally means "a specific penalty imposed for a specific offense." When one examines The Criminal Sentencing Reform Act of 1982, as a whole, it is seen that the Act consistently uses the word "sentence" in this sense. When the Act does deal with multiple convictions, as in T.C.A., § 40–35–210(e), it uses the plural "sentences."

We think that in the phrase, "sentence actually imposed," the adverb "actually" was not intended to refer to the "actual total imprisonment" received by a defendant as the result of simultaneous, multiple convictions, but was used to assure that the courts would not interpret the new act

as basing ineligibility upon the *potential* sentence that *could be* imposed under the statute, rather than upon the sentence imposed by the judge or jury. We believe this to be the case because prior statutory and case law had often based eligibility upon the maximum or minimum sentence *allowed* for an offense by statute, regardless of the term of imprisonment "actually" imposed by the sentencing authority. *See* T.C.A., § 40–21–101, and its predecessor T.C.A., § 40–2901 (1955); *see, also, State v. McCammon*, Tenn.Crim.App., 623 S.W.2d 133 (1981).

The majority of the Court of Criminal Appeals based its decision largely on the fact that T.C.A., § 40–20–111(b), requires that the robbery sentence be served consecutively since the robbery had occurred while the defendant was out on bail after being arrested for the forgery charges. It is true that T.C.A., § 40–20–111(b), does require that the "sentences *shall be served* cumulatively." (Emphasis added.) Thus, the legislative intent may be that felonies committed while a defendant is on bail should result in punishment cumulative to that received for the first offense, thereby deterring further criminal activity by persons released on bail, nevertheless, the statute makes no reference to eligibility for probation.

Moreover, the language of T.C.A., § 40–35–303(a), does not appear to comprehend an interpretation which would distinguish between mandatory and discretionary consecutive sentences. If the legislature meant to deny probation when the consecutive sentences of less than ten (10) years each totalled more than ten years in actual prison time, the fact that the sentences were mandatory or discretionary should make little difference since the policy to be furthered would be the same, that is, a person committing offenses serious enough to require an actual prison term of more than ten years is automatically ineligible for probation.

It is our conclusion that "sentence" as used in T.C.A., § 40–35–303(a), should be construed as that word was construed in *United States v. Henry, supra*. So construed, each of the sentences imposed in

this case was "ten (10) years or less." Therefore, the defendant was eligible to be considered for probation, as the trial court held.

 Having determined that the defendant was entitled to be considered for probation under the proper construction of the statute, we must now determine whether or not the trial court erred in deciding, on the merits, that the defendant was entitled to probation. In considering this issue, we are governed by the scope of review laid down in *State v. Grear*, Tenn., 568 S.W.2d 285, 286 (1978) and *State v. Bell*, Tenn., 664 S.W.2d 288, 290 (1984). In those cases we held that in order for a reviewing appellate court to find an abuse of discretion by the trial court in probation cases, there must be no substantial evidence to support the conclusion of the trial court, giving due consideration to the criteria set out in the statutes and case law for determining suitability for probation. Whenever the evidence would support either conclusion at the trial level, it cannot be an abuse of discretion to decide the case either way.

Accordingly, we review the evidence only so far as necessary to determine whether there was any substantial evidence to support the conclusion of the trial court that the defendant was a fit subject for probation. The defendant was an unwed mother in her mid-twenties and had a two-year-old child dependent upon her for support. She pled guilty to seven felonies, two of which involved welfare fraud. She was on AFDC and received food stamps and she misrepresented her employment status from March, 1980, through August, 1981, and from December, 1981, to May, 1982. She also received unemployment benefits beginning in June, 1981. She had received $1,086.00 in food stamp aid and $812.00 in AFDC payments to which she was not entitled.

The forgeries and robbery were committed by the defendant and a second woman, Doris Davenport. They all occurred within approximately a ten day period. Davenport and the defendant forged and passed, or attempted to pass, checks taken from a purse which Davenport had stolen from one of her co-workers. The forgeries

occurred on at least four separate occasions, May 9–17, 1983. After the arrest of these two women and their release on bond, on May 19, 1983, they followed Dorothy Jenkins, a woman in her fifties, home from the grocery store and while the defendant waited in the car Davenport approached Jenkins and asked to use her telephone. Davenport then demanded the woman's purse and struck her twice with a screwdriver. The defendant claimed that Davenport was the instigator of the forgeries and the robbery; Davenport blamed the defendant. The defendant admitted that she knew that Davenport intended to take Ms. Jenkins' purse but she declaimed that she did not know that Davenport intended to use a screwdriver.

The defendant had one prior arrest for shoplifting in 1977. She did not tell the officer making the pre-sentence report about this prior arrest because, she explained, she thought that it had been expunged from her record. She did admit to the officer that she had occasionally smoked marijuana.

On the other side of the ledger, the defendant's family has made full restitution of $3,700.00 to the victims of her various crimes and she has offered to accept employment at two local food stores and at a cocktail lounge, if legally permissible. She promises to use her earnings to pay back her family. The defendant said that she committed the forgery and robbery when she was unemployed because of a dislocated shoulder which had been in a sling for a month.

The defendant's family promised to supervise the defendant who would be living near her brother and her grandmother. They claim they had not known that she was in trouble before this and assured the court that they would make sure that she stayed out of trouble.

In expressing his reasons for granting parole, the trial judge indicated that he felt the defendant had not told the officer about her shoplifting arrest because she was under a mistaken impression concerning that record. She was, the court noted, "a very truthful witness," admitting some

forgeries for which she had not been convicted. He pointed out how serious it was that the defendant had been convicted of seven felonies, yet he again mentioned her truthfulness and her remorse. He was impressed that one of the police officers involved felt that these arrests had "straightened out" the defendant. The defendant's willingness to work more than full time and her strong family support also impressed the judge, who thus felt that probation would be appropriate. He realized that this was "a minimal sentence" for such serious charges and that a denial of probation would also have been appropriate. We are satisfied, too, that a strong factor in behalf of the defendant was that she had a two-year-old child to look after.

Judge Byers of the Court of Criminal Appeals was of the opinion that our decision in *State v. Hollingsworth,* Tenn., 647 S.W.2d. 937 (1983) required that the judgment of the trial court granting probation should be reversed. The defendant in *Hollingsworth* had committed much more serious crimes, *viz.,* three armed robberies, than the crimes involved in the instant case and this Court held that it was proper for the trial court to look behind the plea bargain in that case and consider the true nature of the offense. We further stated in *Hollingsworth* that in case of multiple armed robberies the factor of deterrence alone was sufficient to justify the trial court in denying a suspended sentence in that case. But in our opinion, *Hollingsworth* neither compels nor necessarily supports a determination that the trial judge abused his discretion in the instant case. Although the defendant here has committed seven felonies, only one of them involved violence to the person and it was the co-defendant, Davenport, not the defendant, that actually perpetrated the physical violence. The forgeries and robbery all occurred after the defendant met Doris Davenport and it is possible that Davenport may have led the defendant astray and was the instigator of these crimes. The defendant was young and had one child. She has obtained employment. Her family appears to be determined to support her in her efforts to avoid further trouble.

Obviously the trial court would have been justified in denying probation; but, he granted probation and has given his reasons therefor which are supported by the evidence. Under our scope of review as set out in *State v. Grear, supra,* and *State v. Bell, supra,* we conclude that his judgment should not be disturbed. Therefore, the judgment of the Court of Criminal Appeals is reversed and that of the trial court is affirmed. Costs incurred upon appeal are taxed against the appellee.

FONES, and COOPER, JJ., and FRANKS, Special Justice, concur.

HARBISON, J., files separate dissenting opinion.

HARBISON, Justice, dissenting.

I respectfully dissent. In my opinion the majority of the Court of Criminal Appeals correctly interpreted the statute which prohibits consideration of probation for a defendant whose actual sentence is ten years or more. In my opinion the General Assembly had reference to the effective sentence imposed upon an accused, whether resulting from one or more offenses, and if that exceeded ten years the person should not be considered eligible for probation.

I agree that the sentence for each offense should be considered separately, and where concurrent sentences do not exceed ten years, and the accused is otherwise eligible, probation may be considered. Where sentences are made consecutive either by law or in the discretion of the trial judge, however, and where the consecutive sentences exceed ten years, then, in my opinion, the individual is no longer eligible for probation. The propriety of discretionary consecutive sentencing may, of course, be reviewed on appeal.

I would concur with the majority of the Court of Criminal Appeals in their interpretation of T.C.A. § 40-35-303(a).