# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 19, 2012

## STATE OF TENNESSEE v. JAMES EDWARD CHURCH, JR.

**Appeal from the Circuit Court for Bedford County**
**No. 17187 Lee Russell, Judge**

---

**No.  M2011-02032-CCA-R3-CD - Filed August 23, 2012**

---

Appellant, James Edward Church, Jr., pled guilty to eleven counts of theft of property valued at less than $500, three counts of burglary, one count of resisting arrest, four counts of auto burglary, and one count of theft of property valued at more than $1,000 in Bedford County. The trial court was to determine the manner and length of the sentences at a sentencing hearing.  The trial court imposed an effective sentence of approximately twelve years and six months.   Appellant appeals, arguing that the trial court erred in denying alternative sentencing.  After a review of the record and the evidence, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed**

J. S. "STEVE" DANIEL, SP. J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P. J., and THOMAS T. WOODALL, J. , joined.

Andrew Jackson Dearing, III, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, James Edward Church, Jr..

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

In March of 2011, the Bedford County Grand Jury returned a multi-count indictment against Appellant for eleven counts of theft of property valued at less than $500, three counts of burglary, one count of resisting arrest, four counts of auto burglary, and one count of theft of property valued at more than $1,000.  Appellant pled guilty to all of the counts of the indictment in July of 2011, with the manner and length of service of the sentences to be determined by the trial court after a sentencing hearing.

At the plea hearing, the prosecutor explained the factual basis for the indictment as follows:

> Count 1 occurred on January 21, 2010, Counts 2 and 3 on January 22, 2010, Count 4 on January 24, 2010, and Count 5, on March 10, 2010.  Those were all thefts at various laundromats around town.  One was The Laundry Room, one was Coin-o-matic, one was Circle O Trailer Park laundry room, then there was another at The Laundry Room and another at Coin-o-matic.
>
> And [Appellant] entered and, basically, broke into various vending machines and/or game machines and took the money therein, which was always less than $500.
>
> Counts 6 and 7 involve - - occurred on August 30ᵗʰ, 2010, that was a break-in at the Fly Arts Building, which, of course, is just a stone's throw from here, and a theft of several items, principally a cellphone and, I believe, a CD player, that it was - - it was reported to the police, they investigated it, the - - of course, they knew that a cellphone was taken and so, what the police did was actually call the cellphone to see if it would be answered.  Indeed, it was answered.  They - - they asked for someone, whoever answered said, not here and basically hung up.  A short time later, someone actually called back from that number, and didn't realize, of course, they were calling Detective Charles Merlo.  And Detective Merlo basically reported that he was looking for - - to buy some drugs.  And so, the person on the other end said, well, come to a particular location and he would hook them up.
>
> So, the - - several members of the police department went to that location. They observed [Appellant] walking towards their vehicle. Detective Marlo called the cellphone number just to see what happened, and they

-2-

observed [Appellant] answering the cellphone. At that point, they step out of their vehicle, [Appellant] took off running. And so, they went in pursuit. [Appellant] got away. I believe it was about the day after that, [Appellant's] father turned the cellphone in, believing it to be stolen and attributed to his son and some of his son's friends.

The - - with regard to - - and that - - the resisting arrest occurred, that was, again, the day after the burglary.

Now, with regard to the remaining counts, they all occurred on October 26, 2010. That is the break-in of several cars at the Park Trail Apartment Complex. These are the same cars that are attributed also to Mr. Leverett, where several cars were broken into and items were taken. The Park Trail Apartment office building was also broken into and some items were taken.

And, then, lastly, that's Counts 19, 20, you had the Early Head Start building that was broken into and several items were taken. When the police investigated that, they discovered some of the stolen items at a residence where Mr. Leverett was. . . . Mr. Leverett's implication that he was present, but denied entry and attributed entry to [Appellant]. Mr. Leverett also gave a statement implicating himself on the auto burglaries and the break-in at the apartment complex office and he implicated [Appellant].

At a sentencing hearing, Appellant apologized to the victims and to the court for the damage that he had inflicted. He acknowledged that what he had done was wrong and that he needed to get out of jail and get a job as soon as possible. The State introduced the presentence report.

The trial court determined that the following three enhancement factors applied to Appellant under Tennessee Code Annotated section 40-35-114: (1) a previous history of criminal convictions above those necessary to establish the range; (8) a failure to comply with conditions of release into the public; and (13) Appellant was on probation at the time that he committed the various offenses. The trial court determined that no mitigating factors that would have any weight applied to Appellant. As a result, the trial court enhanced the misdemeanors up to eleven months and twenty-nine days, the auto burglaries from one year to one year and six months, and the burglary and theft over $1,000 from two years to three years. Further, the trial court determined that consecutive sentencing was warranted because Appellant had an extensive criminal record and committed the crimes while on probation. The trial court "clustered" the convictions that occurred on the same dates, ordering the convictions within each individual "cluster" to be served concurrently and each "cluster" of

convictions to be served consecutively, for a total effective sentence of approximately twelve years and six months.

The trial court found the following with regard to alternative sentencing:

[T]he sad fact of this young man's life is that it's been tried. There have been efforts to put him on probation. We know that he's had the revocations I've previously mentioned. We know that he was on probation at the time that these new crimes occurred. He was on probation, again, from his January 5th, 2010 conviction. It's been tried, it simply has not worked. I find no likelihood of rehabilitation in the absence of serving his sentence. I think there's a very high likelihood that he would recommit if placed on probation or some form of alternative sentencing. And, of course, that factor's in 40-35-103(5). It just appears to me that - - you know, overwhelmingly likely that he would reoffend, so, respectfully, I find the presumption in favor of alternative sentencing has been overcome in a very dramatic way. He has a long history of committing crimes, a long history of getting revoked, a long history of violating the terms of his probation, so I'm not granting alternative sentencing.

Appellant filed a timely notice of appeal.

*Analysis*

On appeal, Appellant challenges the trial court's denial of alternative sentencing. Specifically, Appellant insists that he is eligible for the Community Corrections Program. The State insists that the trial court properly sentenced Appellant.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

T.C.A. § 40-35-102(5).

A defendant who does not fall within this class of offenders "and who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. . . . A court shall consider, but is not bound by, the advisory sentencing guideline in this subdivision." T.C.A. § 40-35-102(6); *see also Carter*, 254 S.W.3d at 347. Furthermore, with regard to probation, a defendant whose sentence is ten years or less is eligible for probation. T.C.A. § 40-35-303(a).

However, all offenders who meet the criteria for alternative sentencing are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in part, "[t]he potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be

imposed." T.C.A. § 40-35-103(5); See *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

We have reviewed the record on appeal and determine that the trial court considered the sentencing guidelines and principles and all pertinent facts in the case. Therefore, there is a presumption of correctness in the findings of the trial court. The bases upon which the trial court denied alternative sentencing were primarily the fact that Appellant had a long history of criminal convictions and, at the time of the crime, was on probation for theft. The trial court relied on this fact to find that Appellant had failed to successfully complete previous attempts at alternative sentencing.

We acknowledge that the fact that Appellant was on probation for another offense at the time of the crime demonstrates a disrespect for the laws of the State of Tennessee. Appellant has been given a chance at probation, and he was unable to meet the conditions of this alternative sentence. This fact alone is sufficient to deny Appellant's request for alternative sentencing. *See State v. Elam*, 7 S.W.3d 103, 108 (Tenn. Crim. App. 1999). We agree with the trial court's assessment that Appellant is not a good candidate for alternative sentencing.

With regard to Appellant's argument that the trial court should have sentenced him to community corrections, the Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders . . . ." T.C.A. § 40-36-103(1); *see also State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

(F) Persons who do not demonstrate a pattern of committing violent offenses[.]

T.C.A. § 40-36-106(a)(1).

Additionally, persons who do not otherwise satisfy the minimum criteria and "who would usually be considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community" may be considered eligible for participation in a community corrections program. T.C.A. § 40-36-106(C). However, prior to placement in community corrections, an offender must first be eligible for probation. *State v. Cowan*, 40 S.W.3d 85, 86 (Tenn. Crim. App. 2000). Although the appellant's effective sentence is approximately twelve years and six months, this would not automatically disqualify him from community corrections consideration because no individual sentence exceeds ten (10) years. *See State v. Langston*, 708 S.W. 2d 830, 832-33 (Tenn. 1986). However, we have already determined that the appellant's criminal record and performance on probation supported the trial court's conclusion that he was not an appropriate candidate for probation and was not an appropriate candidate for placement on community corrections under the "special needs" provision. Accordingly, we conclude that the trial court's denial of alternative sentencing is supported by the record.

### *CONCLUSION*

For the foregoing reasons, we affirm the judgments of the trial court.

_____
J.S. "STEVE" DANIEL, SPECIAL JUDGE

-7-