IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2015

**STATE OF TENNESSEE v. CURTIS COLSTON**

**Appeal from the Circuit Court for Grundy County**
**No. 5361     Justin C. Angel, Judge**

**No. M2015-00761-R3-CD – Filed December 29, 2015**

Pursuant to his plea agreement, the Defendant-Appellant, Curtis Colston, entered a guilty plea to aggravated assault and received a sentence of six years, with the manner of service to be determined by the trial court.  In this appeal, Colston argues that the trial court abused its discretion by denying his request for an alternative sentence.  Upon our review, we affirm the sentence and remand for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**
**Remanded for Entry of Corrected Judgment**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

B. Jeffery Harmon, District Public Defender; Robert G. Morgan, Assistant Public Defender, Jasper, Tennessee, for the Defendant-Appellant, Curtis Colston.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James M. Taylor, District Attorney General; and David Shinn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

**Plea Submission Hearing.**  At the January 14, 2015 plea submission hearing, Colston stipulated to the following facts as outlined by the State:

> [T]he primary witness in this case would be Josh King, an investigator with the Grundy County Sheriff's Department and various other law

enforcement officers, and also a Z.L. and a T.L.[1]  Testimony from Investigator King would be that on August 14, 2014, he was dispatched to the volunteer fire department area of Palmer here in Grundy County on a report of an assault.  Upon his arrival, he found a young man by the name of Z.L. who had been cut on the left part of his shoulder and his rib cage area.  [Z.L.] appeared to be cut with some sharp object.  [Investigator King] took a statement from [Z.L. and T.L., a minor.].  They would testify that the defendant came to the area [where] they were sitting in front of the volunteer fire department.  Z.L. is [a volunteer fireman].  The[ir] testimony would be that the defendant came up to them.  The young, the minor, T.L. was standing outside talking to Z.L., who was sitting inside his pickup truck.  The defendant punched T.L., the minor, and after he punched the young boy[,] Z.L. got out of the vehicle and tried to defend his brother from further assault.  [T.L.] took a swing at the defendant.  The defendant pulled a knife and swung at Z.L., cutting him. The defendant then ran from the scene.

The officers began their investigation and they knew the defendant, where he lived at was up the road from this location.  They went to that location.  They found the defendant lying in the driveway of the location.  He had the knife.  It was [lying] underneath him.  Also, the defendant had like a mask on, some type of camouflage mask, if I recall, and they found that with him also at the scene.  That essentially would be the State's case.

Colston entered a "best interest" guilty plea to one count of aggravated assault and claimed that he had no memory of the incident.  At the March 27, 2015 sentencing hearing, the State introduced the presentence report, which included the following criminal history: felony convictions for marijuana possession, unlawful possession of a firearm, aggravated assault,[2] and several driving related convictions.  It also noted that Colston suffers from chronic liver and kidney disease, hypertension, gout, and chronic anxiety disorder.  It described Colston's mental health as "good," and noted that at the time of the report, he was receiving mental health counseling.

Dianne Hand supervised Colston in the community corrections program during the "late 80's or early 90's."  Although she did not have any written documentation of a prior

---

[1]In an effort to protect the anonymity of the minor victim and his sibling, we will refer to them by their initials only.

[2] The aggravated assault conviction was not listed in the Prior Record section of Colston's presentence report.  However, a copy of the judgment was attached as an exhibit and included with the record on appeal.

violation of community corrections, she testified that Colston did not successfully complete the program and that he was required to serve the remainder of his sentence in confinement. She did not recall the grounds supporting the revocation. Andrew Thornton prepared Colston's presentence report and testified that Colston's last conviction occurred in 1998. He stated that Colston had his probation revoked in federal court and that he had been incarcerated on at least three separate occasions.

Josh King, the investigating officer in the case, testified that he found Z.L. with a three to four inch cut on his left side. After speaking with witnesses, he learned that the injury was the result of an altercation between the two victims and Curtis "Smokey" Colston. Officer King testified that upon arriving at Colston's house, he found Colston lying face down in tall grass next to his driveway. He asked Colston to stand up, and Colston complied, revealing a folding knife and a camouflage mask. He described Colston's demeanor as "incoherent" and recalled that when he found Colston, he was out of breath, complaining of chest pains, and asking for his medication.

David Lance testified that he began working as a jail administrator at the Grundy County jail shortly after Colston was incarcerated. At that time, Colston was not allowed to leave his jail cell because of behavioral issues, and he would verbally lash out when given orders. When Lance and other administrators began allowing Colston out of his jail cell to assist with general work around the jail, Colston's behavior drastically improved. He had not observed any dangerous or violent tendencies from Colston. He stated that at the time of the hearing, Colston was "doing really well[.]"

Susan Sissom, Colston's wife since 2006, testified that she had been in a relationship with Colston for eighteen years. She had previously worked as a librarian at the local public library, which was located immediately next to the fire department where the incident took place. She believed she was subjected to retaliation because she had filed a formal complaint with the city against members of the fire department. On the night of Colston's arrest, she had been working at the library when someone "slung gravel on [her] car." She informed Colston of the incident and took a bath. She said that she was not aware that Colston had gone to the fire department until Officer King knocked on her door requesting Colston's medication. She further confirmed that Colston received treatment at the local Veteran's Affairs Hospital for anxiety as well as chronic kidney and liver disease.

Colston provided the following elocution to the court:

I'd just like to say that I know I don't really remember what happened, but I realize I done wrong and other people have suffered for it, and I'm sorry for

-3-

it, and I'll make sure it doesn't happen again. I'm sick and I need to be with my family. So that's all I'm going to say.

At the conclusion of the hearing, defense counsel asked the court to allow Colston to serve his sentence on community corrections. Counsel noted that while violent offenders are typically not eligible for a community corrections sentence, Colston's history of mental health problems makes him eligible under the "special needs" provision of the community corrections statute. In response, the State pointed out that Colston was not a favorable candidate for an alternative sentence because he was a Range II offender and had previously been incarcerated on three separate instances. The State further argued that, in light of the violent nature of the offense, it was appropriate to require Colston to serve his sentence with the Tennessee Department of Correction.

In denying the request for alternative sentencing, the trial court explained that, while Colston's health weighed in favor of a sentence in community corrections, other factors outweighed that consideration. The court reasoned:

> The strongest factor in your favor about probation is your health situation. However, the other factors, I think, are out weighing that factor. The most important[,] the prior criminal history of the defendant, and, sir, I'm looking at the pre-sentence report and your prior criminal history . . . [y]ou've been sentenced to incarceration already, and I feel like there are no lesser alternatives for me at this time, Mr. Colston. I feel like you've been to – you've been to the penitentiary, you've plead guilty to felonies. You have plead guilty now to a violent offense, sir, and I – the Court has no other option, I feel, than to sentence you to serve six years with the Tennessee Department of Correction.

This timely appeal followed.

## ANALYSIS

Colston argues that the trial court abused its discretion by denying him an alternative sentence. He acknowledges that he does not meet the minimum criteria for consideration for a community corrections sentence because of his previous convictions for violent crimes. See T.C.A. § 40-36-106(a)(1)(D)-(F). However, he asserts that the trial court erred in not sentencing him to community corrections under the "special needs provision" of the Community Corrections Act. The State responds that the trial court properly imposed the sentence in this case. We agree with the State.

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). Because the record shows that the trial court carefully considered the evidence as well as the purposes and principles of sentencing prior to denying an alternative sentence, Colston has failed to "overcome the presumption of reasonableness afforded sentences which reflect a proper application of the purposes and principles of our statutory scheme." Id. at 280. Therefore, we afford a presumption of reasonableness to the sentence imposed by the trial court in this case.

Here, Colston concedes that he was not considered a favorable candidate for alternative sentencing because he had been previously incarcerated on at least three separate instances. See T.C.A. § 40-35-102(6)(A). He further acknowledges that he was not eligible for a community corrections sentence under the general provisions of the Community Corrections Act. See T.C.A. §40-36-106(a)(1)(A)-(F). Nevertheless, he insists that the trial court abused its discretion in denying his request for a community corrections sentence under the "special needs provision" of the Act. The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Id. § 40-36-103(1). Eligible offenders under the Community Corrections Act include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

(F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Id. § 40-36-106(a)(1)(A)-(F). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36-106(d). The "special needs" provision of the Community Corrections Act provides as follows:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Id. § 40-36-106(c).

Before being eligible for a community corrections sentence under the "special needs" provision of the Act, Colston must be eligible for probation. State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (citing State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989)). In this case, Colston was eligible for probation because his sentence was ten years or less and because the offense was not specifically excluded by statute. See T.C.A. § 40-35-303(a); State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986).

Next, the trial court is required to determine whether the offender is suitable for placement in the community corrections program by finding the following:

> (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than in a correctional institution.

Id. at 439 (citing State v. Robert Wilson, No. 03C01-9209-CR-00305, 1993 WL 79626, at *5 (Tenn. Crim. App., at Knoxville, Mar. 22, 1993)). In the present case, the trial court made specific findings as to whether Colston was a suitable candidate for a community corrections sentence. It noted that the "strongest factor in [Colston's] favor about probation is [his] health situation," and then it determined that this factor was outweighed

by Colston's extensive criminal history. The record does not preponderate against the trial court's finding. Although Colston's wife testified that he suffered from anxiety disorder, Colston failed to put on any proof demonstrating that his anxiety disorder was reasonably related to, or contributed to, his criminal conduct. Furthermore, in light of the fact that Colston described his current mental health as "good" and stated that he was currently receiving mental health treatment, Colston failed to establish that his special need would be better treated in the community rather than in a correctional institution. Accordingly, we agree with the trial court, and conclude that he was not a proper candidate for a community corrections sentence. Colston is not entitled to relief.

## CONCLUSION

We affirm the judgment of the trial court. However, we note that the judgment form incorrectly lists the date of judgment in this case as January 14, 2015, and the date of sentencing as March 27, 2014. According to the record, both the date of judgment and the date of sentencing should be March 27, 2015, and we remand for entry of a corrected judgment reflecting that date.

_____
CAMILLE R. McMULLEN, JUDGE