# THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT KNOXVILLE
## April 26, 2022 Session

## STATE OF TENNESSEE v. DOUGLAS CODY GASS

### Appeal from the Criminal Court for Hamilton County
### No. 309956   Barry A. Steelman, Judge

_____

### No. E2021-00692-CCA-R3-CD
_____

Douglas Cody Gass, Defendant, entered an open guilty plea to reckless aggravated assault (Count 10), felony evading arrest (Count 11), and vehicular homicide (Count 12); and the remaining nine counts were dismissed. Following a sentencing hearing, the trial court imposed a total effective sentence of twenty years—four years to serve in Count 10, six years to serve in Count 12, and four years suspended to ten years' probation in Count 11— and aligned the sentences consecutively. Defendant claims that the trial court erred in setting the length of his sentences, in imposing consecutive sentences, and in denying alternative sentencing in Counts 10 and 12. Discerning no error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

Kendell F. Stivers and Mitchell A. Raines, Assistant Public Defenders – Appellate Division; Steven E. Smith, District Public Defender, and Jonathan Wilson, Assistant District Public Defender, for the appellant, Douglas Cody Gass.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Senior Assistant Attorney General; Neal Pinkston, District Attorney General; and P. Andrew Coyle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Guilty Plea Submission Hearing

According to the factual basis presented by the State at the guilty plea submission hearing, Defendant, on October 7, 2019, led members of law enforcement on a high-speed chase that began in Catoosa County, Georgia, and crossed into Hamilton County, Tennessee, where he lost control of his vehicle and struck an electric utility pole. The impact ruptured a transformer on the utility pole causing it to leak oil onto the vehicle. The transformer oil ignited. Defendant exited the vehicle and fled on foot. Rather than pursue Defendant, the officers on the scene attempted to assist the passengers from the burning vehicle. The front-seat passenger, Jacob Buchanan, was able to exit the vehicle with only minor injuries. The back-seat passenger, Kobe Burchfield, was not able to get out of the vehicle before being severely burned. He was rushed to Erlanger Hospital and then air-lifted to Vanderbilt Medical Center where he died as a result of his injuries.

Mr. Buchanan told the officers at the scene that the three men had been smoking marijuana and went to a McDonald's in Fort Oglethorpe, Georgia. After they left McDonald's, law enforcement officers attempted to initiate a traffic stop. Defendant sped away in an attempt to evade arrest. Mr. Buchanan said that he and Mr. Burchfield tried to get Defendant to stop the vehicle.

After fleeing the scene of the accident, Defendant went to Florida. He dyed his hair to change his appearance. He was finally apprehended weeks later by U.S. Marshals and extradited to Tennessee.

## Sentencing Hearing

The State introduced the presentence report as Exhibit 1 and then called Chattanooga Police Department (CPD) Traffic Officer Jeffery Buckner. Officer Buckner was dispatched to a "residential area" near "the Georgia line." He said that, by the time he arrived at the scene, there were numerous law enforcement officers and firemen on the scene, the vehicle was engulfed in flames, and both passengers had been transported from the scene by ambulance. Officer Buckner obtained the dash cam video from the Fort Oglethorpe Police Department and compiled body cam footage from the CPD officers at the scene. The dash cam video and the body cam footage were entered by agreement as exhibits and played at the hearing.

Numerous family members of Mr. Burchfield testified about how Mr. Burchfield's death had impacted them. Jeff Chambers, Mr. Burchfield's uncle, said that his nephew was "funny, sensitive, loving, and respectful but also insecure and naïve." He said that he had known Defendant for several years and stated that Defendant

is a thief, drug user, and criminal. He is also a predator. He is a few years older than my son and street savvy. He was acutely aware of [Mr. Burchfield]'s insecurities and preyed on them. He would call him into just about anything -- he would talk him into just about anything through shame, threats, or whatever worked for him to get his way.

Defendant's mother testified that Defendant had a twenty-six-month-old daughter who was in state custody and living with her maternal grandparents. She said that Defendant worked construction prior to the offense and wanted to go to college. Defendant's mother and sister testified that Defendant, Mr. Burchfield, and Mr. Buchanan were close friends and had grown up together.

Defendant made an allocution during which he said that everyone in the vehicle "had the same thing in mind that night, and it was to get away. No one ever asked to stop." Defendant said that he "spent nearly [his] entire life with [Mr. Burchfield] and loved him as a brother and best friend."

Defendant introduced a letter from Wendy Harris, Reentry Supervisor with the Hamilton County Sheriff's Office, stating that Defendant had been a part of the reentry program since July 2020 and that he had completed "Discover Yourself," "an independent study course that takes an individual through understanding who they are and overcoming obstacles they may have encountered." She said that Defendant also completed an eight-week correspondence course through Christian Library International. Ms. Harris wrote, "It is my belief that [Defendant] is ready to rebuild his life. I have witnessed his newfound passion to improve himself." Defendant also introduced a "Letter of Character" from D. McCloud, a correctional counselor at Silverdale Detention Center. Mr. McCloud said that Defendant had shown "that he is responsible and hardworking." He also said that Defendant had "shown the staff and other inmates tremendous respect, and [that Defendant] is always eager to work and help out anyone in need." Mr. McCloud wrote that he believed that, if Defendant "was to get out[,] he would be a remarkable member of society and strive to be that kind of person every day." Finally, Defendant submitted a letter from Nashville Rescue Mission accepting Defendant into its six-to-eight-week residential program upon his release from incarceration.

**Pronouncement of Sentence**

At the end of the sentencing hearing, the trial court stated that it had considered the evidence received at the sentencing hearing, the presentence report, the purposes and

principles of sentencing, the nature and the characteristics of the criminal conduct involved, mitigating and enhancement factors, the allocution made by Defendant on his behalf, the potential for or lack of potential for rehabilitation, the statistical information provided by the Administrative Office of the Courts as to sentencing for similar offenses, and the arguments of counsel. Regarding the purposes and intent of sentencing, the court noted that the "foremost purpose" of sentencing was to "promote justice" and that certain principles of sentencing were designed to ensure that "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1) (2021). The court also noted that punishment should be imposed: (1) "to prevent crime and promote respect for the law by providing an effective general deterrent to those likely to violate the criminal laws of this State," (2) to restrain "defendants with a lengthy history of criminal conduct," and (3) to encourage "effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants." Tenn. Code Ann. § 40-35-102(3) (2021). The court recognized that, because "state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentencing involving incarceration." Tenn. Code Ann. § 40-35-102(5) (2021).

Turning to the presentence report, the court found that, during the four-year period since becoming an adult, Defendant had been convicted of the following criminal offenses in the State of Georgia:

(1) November 21, 2017, possession of cocaine and driving while impaired "DUI less safe (drugs)" and sentenced to two years' probation.

(2) November 16, 2017, disorderly conduct.

(3) September 14, 2017, driving without a license on his person and speeding.

(4) November 22, 2016, seat belt violation, but granted diversion on other charges.

(5) May 6, 2015, "false reports," reckless driving, and "improper driving on a divided highway," and sentenced to three years' probation.

The court also noted that Defendant's criminal history showed that he had violated probation on three occasions. The court found that Defendant's prior convictions of "impaired driving, reckless driving, and driving too fast for conditions are relevant to and are probative with regard to the matters that the [c]ourt must consider today with regard to sentencing."

- 4 -

Based on Defendant's conduct during his incarceration, as evidenced by the letters from Ms. Harris and Mr. McCloud, the court found that mitigation factor (13) applied. Tenn. Code Ann. § 40-35-113(13) (2021). The court noted that Defendant admitted to underage drinking, using marijuana, and possessing cocaine. The court applied enhancement factor (1) finding that Defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1) (2021).

Concerning the nature and characteristics of the criminal conduct involved, the court stated that the dash cam video "illustrated a long and drawn-out car chase" at "extremely high speeds" during which Defendant can be observed passing ten other vehicles before crashing into a utility pole. The court also applied enhancement factor (10), finding that Defendant "had no hesitation about committing a crime when the risk to human life" was high. Tenn. Code Ann. § 40-35-114(10) (2021). The court noted that, not only did Defendant endanger the life of Mr. Burchfield and Mr. Buchanan, but that he also endangered "an uncounted number of people in ten motor vehicles" and "the pursuing officers."

The court found that the two enhancement factors "substantially outweigh[ed] anything that could be offered with regard -- to mitigation." The court imposed the maximum within-range sentences of six years for vehicular homicide, four years for evading arrest, and four years for reckless aggravated assault.

Concerning the alignment of the sentences, the court noted that, "before [Defendant] attained the age of 21, he had already been in and out of court in Walker County, Hamilton County, and Fort Oglethorpe City Court, for everything from possession of cocaine to driving while impaired to driving too fast for conditions, to reckless driving." The court found that Defendant "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2) (2021). Based on the dash cam video, the court noted that Defendant drove through neighborhoods at a high rate of speed while crossing double yellow lines to pass multiple vehicles and that "he drove right through that intersection prior to the wreck and almost T-boned another car." The court found that Defendant was a dangerous offender, as that term is defined in Tennessee Code Annotated section 40-35-115(b)(4) (2021), and that Defendant "had no hesitation about committing a crime in which the risk to human life was high." Addressing the *State v. Wilkerson* factors, the court found "that an extended sentence [was] necessary to protect the public against further criminal conduct by [D]efendant" and that consecutive sentences were warranted based on the "severity of the offenses committed." *State v. Wilkerson,* 905 S.W.2d 933, 939 (Tenn. 1995). The court ordered the three sentences to run consecutively.

The court noted that, because Defendant was a Range I standard offender convicted of a Class C felony and two Class D felonies, he was a favorable candidate for alternative sentencing. The court noted that Defendant had the burden of establishing his suitability for full probation. The court found that Defendant failed to show that "granting full probation will subserve the ends of justice in the best interest of both the public and [D]efendant." The court found that, based on the conduct of Defendant as evidenced in the dash cam video, confinement was necessary to avoid depreciating the seriousness of the offense. The court ordered sentences of confinement for the four-year sentence in Count 10 and the six-year sentence in Count 12 but suspended the four-year sentence in Count 11 to ten years' probation.

## ANALYSIS

Defendant raises three sentencing issues on appeal. He claims that the trial court erred by sentencing him "to the maximum in-range sentence for every count," by ordering consecutive alignment of the sentences "because the aggregate sentence length imposed was not the least restrictive measure to protect the public and did not relate to [his] potential for rehabilitation," and by ordering him to "serve ten years of the twenty-year sentence in prison." The State argues that the trial court did not abuse its discretion in the imposition of the sentences. We agree with the State.

### Standard of Review

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2021), Sentencing Comm'n Cmts.

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2021); *Bise*, 380 S.W.3d at 706. While the trial court should consider enhancement and mitigating factors, such factors are advisory only. *See Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). A trial court's "misapplication of an enhancement or mitigation factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

### Length of Sentences

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2021).

Defendant was sentenced as a Range I standard offender. The sentencing range for Class C felony vehicular homicide was three to six years, and the sentencing range for reckless aggravated assault and evading arrest, Class D felonies, was two to four years. Tenn. Code Ann. §40-35-112(a)(3), (4) (2021). The trial court imposed within-range sentences after articulating its reasons in accordance with the purposes and principles of sentencing and after considering the presence or absence of mitigating and enhancement factors and weighing those factors. We will, therefore, review the within-range sentences imposed by the court under an "abuse of discretion standard with a presumption of reasonableness." *Bise*, 380 S.W.3d at 708.

Defendant claims that the trial court failed to consider Defendant's potential for rehabilitation. We disagree. The court discussed the evidence supporting Defendant's potential for rehabilitation, including Ms. Harris's and Mr. McCloud's letters, the certificates of completion from the Discover Yourself and Living on Purpose programs, and Defendant's acceptance into the Nashville Rescue Mission's Life Recovery Program upon release and found that his potential for rehabilitation was a mitigating factor. However, the court found that the two enhancement factors substantially outweighed the mitigating factor. Weighing mitigating and enhancement factors is left to the trial court's sound discretion. *Carter*, 254 S.W.3d at 343. The record supports the trial court's finding that Defendant had "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" and that Defendant "had no hesitation about committing a crime when the risk to human life" was high. Tenn. Code Ann. § 40-35-114(1), (10) (2021).

The within-range sentences that were imposed by the trial court were consistent with the purposes and principles of the Sentencing Act. The court did not abuse its discretion

by imposing the maximum within-range sentences for the two Class D felonies and for the Class C felony.

**Manner of Service**

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *Caudle*, 388 S.W.3d at 278-79 (citing *Bise*, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2021).

Tennessee Code Annotated section 40-35-303 states that "[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3)." Tenn. Code Ann. § 40-35-303(a) (2021). A defendant has the burden of establishing that he is suitable for probation and "demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2021).

As a standard offender convicted of two Class D felonies and one Class C felony, Defendant was a favorable candidate for an alternative sentence under the advisory sentencing guideline in Tennessee Code Annotated section 40-35-102(6)(A) (2021). Courts are encouraged to utilize alternative sentences. *See* Tenn. Code Ann. § 40-35-102(3)(C) (2021); *Ray v. Madison Cty., Tennessee*, 536 S.W.3d 824, 833 (Tenn. 2017). At the beginning of the sentencing hearing, Defendant asked the court to "grant him probation." Defendant was eligible for probation because the actual sentence imposed for each conviction was ten years or less, *see State v. Langston*, 708 S.W.2d 830, 832-33 (Tenn. 1986) (concluding that a defendant is eligible for probation if each of the sentences is ten years or less regardless of the effective sentence), and because the offenses for which Defendant was sentenced were not specifically excluded by statute. *See* Tenn. Code Ann. § 40-35-303(a) (2021).

The trial court found that the dash cam video "illustrated a long and drawn-out car chase" at "extremely high speeds" during which Defendant can be observed passing ten other vehicles on double yellow lines before crashing into a utility pole. The trial court characterized Defendant's conduct as "extremely dangerous, extremely reckless, extremely inconsiderate, extremely selfish, extremely and inexplicably unnecessary" and found that confinement was necessary to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B) (2021).

The record also shows that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]" Tenn. Code Ann. § 40-35-103(1)(C) (2021). As the trial court pointed out, and as shown on the presentence report, three probation violation orders were entered during the approximately four-year period before Defendant committed the offenses in this case.

Defendant failed to show that granting full probation "will subserve the ends of justice and the best interest of both the public and [D]efendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956). The trial court did not abuse its discretion by ordering the sentences in Counts 10 and 12 to be served in confinement.

## Consecutive Sentencing

In *State v. Pollard*, the Tennessee Supreme Court expanded its holding in *Bise* to trial courts' decisions regarding consecutive sentencing. *Pollard*, 432 S.W.3d at 859. "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862.

The statutory factors governing alignment of sentences for a defendant convicted of multiple offenses is codified at Tennessee Code Annotated section 40-35-115(b), which provides in pertinent part:

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that defendant is:
>
> . . .
>
>> (2) an offender whose record of criminal activity is extensive; [or]
>>
>> (4) a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]

Tenn. Code Ann. § 40-35-115(b)(2), (4) (2021).

The trial court found that Defendant's "prior disregard for the driving laws was substantial and was repeated, and, for someone his age, was extensive." In the approximately four-year period before the charges in this case, Defendant was convicted of possession of cocaine, driving while impaired "DUI less safe (drugs)," disorderly conduct, driving without license, speeding, false report, reckless driving, and "improper driving on a divided highway." During that same period of time, Defendant violated probation three times. Defendant has a history of underage drinking and illegal drug use. The court correctly determined that Defendant was an offender whose record of criminal activity is extensive under Tennessee Code Annotated section 40-35-115(b)(2) (2021).

The trial court found that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high" and concluded "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences . . . reasonably relate to the severity of the offenses committed." Tenn. Code Ann. § 40-35-115(b)(4) (2021); *Wilkerson*, 905 S.W.2d at 936. The court's findings and conclusions are supported by the record.

Any one ground set out in Tennessee Code Annotated section 40-35-115(b) is "a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). The trial court properly articulated its reasons for ordering consecutive sentences, and the sentences will be

presumed reasonable. *Id.* The trial court did not abuse its discretion in ordering the sentences to be served consecutively.

## Conclusion

The judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE