IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 24, 2025

## STATE OF TENNESSEE v. JACOB COLUMBUS DEAL

**Appeal from the Criminal Court for Greene County**
No. 23CR123      Alex E. Pearson, Judge

_____

### No. E2024-01810-CCA-R3-CD

_____

In May 2023, the Greene County Grand Jury issued a presentment against Defendant, Jacob Columbus Deal, charging him with three counts of statutory rape by an authority figure and three counts of aggravated statutory rape. Pursuant to a plea agreement, Defendant pled guilty to one count of aggravated statutory rape to be sentenced out of range at ten years as a Range I offender at thirty percent with the trial court to determine the manner of service. Following a sentencing hearing, the trial court denied alternative sentencing and ordered Defendant to serve his entire ten-year sentence in confinement. On appeal, Defendant argues that the trial court erred by denying him alternative sentencing. Following our review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and MATTHEW J. WILSON, JJ., joined.

J. Matthew King, Kingsport, Tennessee, for the appellant, Jacob Deal.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Cecil Mills and Ritchie Collins, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

Initially, we note that the guilty plea transcript hearing is not included in the record on appeal. "[A] transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed." *State v. Keen*, 996 S.W.2d 842, 843-

44 (Tenn. Crim. App. 1999); *see also* T.R.A.P. 24(b) (stating that the appellant has the duty to prepare a record which conveys a "fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal."). Failure to include the transcript of the guilty plea hearing in the record risks waiver of a sentencing issue. In any event, an appellate court will consider on a case-by-case basis whether a record is sufficient for review. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012); *see State v. Darrius Levon Robinson*, No. E2023-00391-CCA-R3-CD, 2024 WL 837945, at \*5 (Tenn. Crim. App. Feb. 28, 2024), *no perm. app. filed*. The facts in this case are stated in the presentence report. Additionally, the record includes a transcript of an appeals hearing conducted in the Department of Children's Services ("DCS") Administrative Procedures Division. Thus, we find the record sufficient for review and will consider Defendant's sentencing issue on its merits, notwithstanding the absence of the transcript of the guilty plea.

The presentence report indicates that an incident report was filed with the Greene County Sheriff's Office showing that on June 16, 2021, Deputy Chris Shuffler responded to the report of a statutory rape at the home of the fourteen-year-old victim's foster parents. As the victim's family was preparing for vacation, and the victim's foster mother was packing for the victim, she discovered a blue tablet and a black iPhone.[1] When confronted about the devices, the victim stated that she used the devices to contact the forty-one-year-old Defendant, who was a teacher and assistant coach at West Greene High School, through the PlayStation Application ("app") and also played "Call of Duty" online with Defendant and some friends. However, she later said that she used only the tablet to communicate with Defendant. The victim said that her communications with Defendant through the app escalated into inappropriate comments. She did not remember the exact comments, and the texts from the conversations had been deleted.

The report further stated:

Through the text [Defendant] told the victim [. . .] that he knew that she had been going through a tough time and that if she ever needed to come lay in his office she was welcome anytime. She stated that he had a futon couch in his office. She stated that sometime in January 2021 that she had went into his office. She had sat on the futon, when [Defendant] started to rub on her and kiss[ ] on her. She stated that she wanted him to stop and even tried to move away from him. She stated that she just couldn't say no. [The victim] stated that there was [three] or [four] instances ranging from January to just before March 15, 2021. There was fondling over her clothes and inside the clothes. There was also penetration with [his] finger and his penis. [The victim] stated that there has been no contact with [Defendant] since the last

---

[1]According to Detective Chuck Humphreys' testimony at the sentencing hearing, the victim was not allowed to have electronic devices in the home.

instance in March. [The victim] states that the black iPhone was bought and given to her by [Defendant].

At the sentencing hearing, the presentence report and Defendant's psychosexual risk assessment were entered as exhibits. Defendant's prior criminal history consisted of a 2005 misdemeanor conviction for driving while under the influence of an intoxicant for which he was sentenced to eleven months and twenty-nine days, suspended except for forty-eight hours. Defendant graduated from high school and obtained a Bachelor of Arts degree from Maryville College in "Child Development with Teacher License." He reported his overall health as "poor" and "fair" and said that he suffered from neuropathy, anxiety, depression, and ulcerative colitis. Defendant listed his prescribed medications and noted that he had been diagnosed with "anxiety/bipolar" while in treatment. Further, Defendant reported that he began drinking alcohol at age eighteen and drank daily until March 2023. He had undergone both inpatient and outpatient treatment for alcohol addiction. The psychosexual risk evaluation showed that Defendant's "visual fixation to [six] to [twelve] year old females was significantly higher than that to all other females," and "his sexual visual fixation to [six] to [twelve] year old males was significantly higher than all other males" suggesting that Defendant had an "abnormally high level of preoccupation and objectification of pubescent and prepubescent children[.]"

Detective Chuck Humphreys with the Greene County Sheriff's Office testified that he was assigned to investigate the present offenses. Transcripts of the DCS appeals hearing concerning the allegations against Defendant were exhibited to his testimony. Detective Humphreys testified that he traveled to Virginia, spoke with the victim, and obtained records via a search warrant of conversations between the victim and Defendant from the victim's PlayStation. He also collected the victim's journal.

Detective Humphreys then read excerpts from the communications between Defendant and the victim into the record. In one conversation, Defendant professed his love for the victim and mentioned her stopping by for a surprise. The victim also mentioned flirting with Defendant. In another conversation, Defendant said that the victim looked "extremely good" in her dress that day and asked if she was still okay with the "physical part" of their relationship. The victim responded that she was "more than okay with the physical part." Defendant then said that the victim had "spoiled" him with their time together and professed his love for her. He also said: "If you were 18, we would just pack up and run away together and settle somewhere . . . to ourselves of course, somewhere where you could get your med[ical] degree[.]" On another occasion, when the victim indicated that she was not feeling well, Defendant responded:

Just be honest, are you not wanting to or just not comfortable having a physical relationship? I mean, it was crazy the first couple of weeks and then since then nothing. I just want you to tell me the truth. I'm not mad, upset or anything, just want you to tell me the truth.

The victim told Defendant that she was "perfectly fine" with having a physical relationship but had a lot of medical issues due to a car accident and that she thought that her appendix might be about to rupture. She also said, "But that ain't no excuse. I'm just freaked out that I might get in trouble or get you in trouble, you know." In another conversation, Defendant said that he needed another "study session" with the victim, and she responded that she wanted to be "on top this time." Detective Humphreys read additional conversations about the victim meeting Defendant in his office, their relationship, sexual positions, and her grade in his class.

Detective Humphreys testified that Defendant had also bought the victim some dresses. The victim told Detective Humphreys that she had thrown away one of the dresses because it was "see through." In text messages Defendant sent the victim, there were pictures of the see-through dress and other dresses. In one message, Defendant told the victim he was more than just a "sugar daddy" and wanted to buy her nice things because he "had feelings invested" and cared for her more than she knew.

The victim read her impact statement to the court. She indicated that she had not had a good night's sleep in nearly four and a half years, and she had been prescribed medication because of nightmares due to her relationship with Defendant. She had also been in therapy. She said, "I can't even go to my college professors or any of my teachers for that matter since this happened without being triggered by the fact that I - - this happened." She also testified that "I can't even go to school anymore without feeling like I am pressured to go, and don't ask my teachers anything because I feel like I'm the problem, like it's a problem of that case." The victim noted that she was failing chemistry but was afraid to talk with her male professor in person or by email. The victim further said that she could not have intimate relationships without "going into panic attacks constantly" and "having to reassure them and constantly tell them what had happened so they don't think that I'm some loser like having panic attacks for no reason." The victim felt her relationship with Defendant would affect her being married in the future, and if she had children, she would not want them in school.

Bett Price was Defendant's former teacher and worked with him at Rogersville Middle School after he became a teacher. She testified that she had observed Defendant in school and while he was coaching and noted that the "kids loved him," and his family, including his parents and brother, were always present at basketball games. Ms. Price believed Defendant had positively impacted students; however, she was aware that Defendant had sexual intercourse with the victim. Ms. Price testified that the "whole situation breaks [her] heart" and that "[w]e all make mistakes and learn from them." She felt that Defendant was a "good, loving father" who "[m]ade mistakes as a husband, but that can be corrected."

Alan St. Cyr testified that he was Defendant's sponsor in Alcoholics Anonymous ("AA"), and they first met in September 2024. Defendant was doing well in AA and had a "willingness to do whatever it takes to go through the program[.]" Mr. St. Cyr noted that he required Defendant to check in with him daily and that they were "continuing through the [AA] steps." He said that when not in AA meetings, Defendant was in church or with his family. On cross-examination, Mr. St. Cyr testified that Defendant had completed four steps of twelve in the AA program.

Ethan Tate, a full-time minister at Rogersville Church of Christ and full-time instructor at Tri-Cities School of Preaching Development in Elizabethton, testified that he met Defendant in 2020 when Mr. Tate moved to Rogersville to preach. He noted that he had interacted with Defendant and his family in a variety of ways, including church services and other family and community events. He was aware Defendant had undergone treatment and described the changes he had noticed in Defendant since being released from treatment. Mr. Tate felt Defendant was more open "with his problem" and would "do better."

On cross-examination, Mr. Tate agreed that Defendant did not begin seeking Mr. Tate's "wisdom" until June or July of 2022, after these offenses occurred. He said that Defendant realized that he "had a major issue with alcohol at that point."

Defendant presented letters of support from his wife, daughter, friends and neighbors, as well as letters from Discovery Place and Cornerstone Recovery, both drug and alcohol treatment facilities, indicating completion of their programs. Defendant gave an allocution during which he apologized to the victim and her family, noting in part that he was an "educator, a teacher, and individual working in the school system that was supposed to provide a sense of trust, a sense of comfort and a sense of security" for his students and individuals in his classroom. He further acknowledged that "in that sense I took advantage of that situation with my role and I sincerely apologize to her for that." He further apologized to the victim for any emotional stress he caused and any shame, embarrassment, or harm to the victim's reputation or "anything of that nature." Defendant also acknowledged his alcohol addiction and the effects it had on him and that he had received treatment for his addiction. He further apologized to his wife and family for "putting them in this position," and he apologized to the Greene County School System and to those educators and supervisors he had worked with over the years who taught him professionalism. Defendant requested that the trial court place him on supervised probation.

The trial court noted that it had read the letters written on Defendant's behalf and reviewed the presentence report, psychosexual assessment, and the victim's diary. The court also carefully reviewed the facts and circumstances of the offenses and sentencing principles. The trial court was particularly concerned about the age difference between the forty-one-year-old Defendant and the fourteen/fifteen-year-old victim. The court further

noted that Defendant had been teaching for "multiple years" and had taught "multiple students," and it was "obvious from the communications that he knows this is wrong the entire time" and attempted to persuade the victim not to tell anyone. The court specifically found that Defendant exhibited "predatory behavior." The court was also concerned with the results of the psychosexual risk assessment indicating that Defendant's "visual fixation and sexual fixation to six- to twelve-year-old females was significantly higher than that to all other females."

The trial court also found three applicable enhancement factors: that the offense was committed to gratify the defendant's desire for pleasure or excitement, that Defendant was in a position of trust, and that the offense was committed on school grounds and when minors were present. T.C.A. § 40-35-114 (7), (14), (15). The court did not find any applicable mitigating factors. Concerning alternative sentencing, the trial court found:

> So the circumstances of the offense are just not good facts for [Defendant]. I mean, he took an individual, pulled them out of class, was arranging, prearranging these encounters. This is not something where that one thing led to another. This was a designed, orchestrated conversation, involved phones, involved dresses, and it even talks about it in the victim's diary the things that - - and she didn't really know how to feel about it and, of course, and here all along, him being the teacher, he is telling her that he loved her and all this kind of stuff and there was problems at home and all the things that are in the record about it. And again, as I say, when you're [fourteen/fifteen] and [forty-one], those numbers just don't - - those numbers just don't add up in my mind.
>
> So I find the circumstances of the offense are such that they do reach to a level that probation should be denied. And when I look at the other - - so that's the nature and circumstances of the criminal conduct involved. The defendant's potential or lack of potential for rehabilitation including the risk during the period - - during probation defendant will commit another crime. [Trial counsel] has made several good arguments with respect to that. He'd be on the sex offender registry and won't be allowed to be at school, won't be allowed to be at the games, things of that nature.
>
> And then we come down to number three, whether a sentence of full probation would unduly depreciate the seriousness of the offense. And the court's of the opinion it absolutely would. We are dealing with a situation of a teacher who this - - this is just a different set of facts than a situation of where something happened in a isolated incident or it was, as I said, used the illustration of a [seventeen] year old getting ready to be [eighteen] year old talking about some teacher that just graduated college and is starting out teaching. I'm not condoning that, not saying that would be appropriate in

any way, but there's a significant distinguishing factor there. So [Defendant] needs to be deterred, other individuals need to be deterred.

\* \* \*

When I look at 40-35-103, and [trial counsel] hit all these, I do think confinement is necessary to avoid depreciating the seriousness of the offense. And I think confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. I mean, if you're a teacher, you're a police officer, you're an individual that is in a position where you have authority over other people, I think confinement is particularly suited to deter other individuals from committing similar offenses.

And I think the record is sufficiently built with all these text messages and all these - - the assessments that have been provided. There's just no excuse no acceptability for what [Defendant] did. I mean, there's just not. She was a [fourteen/fifteen] year old girl in a foster care situation. He just took advantage of it and did so multiple times. There is - - the sentence imposed should be no greater than that deserved for the offense committed. I think incarceration is deserved for the offense committed. And quite honestly, if I were in the same position, that's what I would expect to happen to me.

The trial court acknowledged Defendant's efforts at rehabilitation as "favorable"; however, the court denied Defendant's request for probation. It is from this denial that Defendant now appeals.

## Analysis

Defendant argues that his sentence is excessive because of the trial court's reliance on the circumstances of the offense in denying his request for alternative sentencing and ordering him to serve his full ten-year sentence in confinement. The State asserts that trial court acted within its discretion by denying alternative sentencing. We agree with the State.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v.*

*Caudle*, our Supreme Court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d at 278-79. Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.
> (8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. T.C.A. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence ... should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for probation or any other alternative sentence, including community corrections. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

When imposing a sentence of full confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant [.]

T.C.A. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), (4).

In this case, Defendant was eligible for probation because the agreed-upon sentence was ten years or less. *Id.* § 40-35-303(a); *See State v. Langston*, 708 S.W.2d 830, 832-33 (Tenn. 1986). Additionally, the convicted offense was not specifically excluded by Tennessee Code Annotated section 40-35-303(a). Defendant was also considered as a favorable candidate for probation because he was convicted of a Class D felony. T.C.A. § 40-35-102(6).

Here, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense. The court also found that confinement was "particularly suited to provide an effective deterrence" to others in positions of authority, such as other teachers and police officers. While the trial court acknowledged Defendant's rehabilitative efforts, it found that "actions have consequences" and denied an alternative sentence based on the circumstances of the offense and the need for deterrence.

Defendant argues that the trial court erred by denying alternative sentencing based solely on the seriousness of the offense, because "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006). However, this standard does not apply when the trial court considers another basis for denying probation. *See State v. Trent*, 533 S.W.3d 282, 293-94 (Tenn. 2017). In this case, in addition to considering the seriousness of the offense and deterrence, the trial court also considered the purposes and principles of sentencing, applicable enhancement and lack of mitigating factors, and the psychosexual risk assessment which indicated that Defendant's "visual fixation and sexual fixation to six to twelve year old females was significantly higher than that to all other females." *See State v. Harrison*, No. W2024-00869-CCA-R3-CD, 2025 WL 593109, at *3 (Tenn. Crim. App.

Feb. 24, 2025), *no perm app filed* (finding that the "trial court did not solely rely upon the need to avoid depreciating the seriousness of the offense in its determination to deny probation as it clearly weighed the facts and circumstances of the offense." The court also applied the purposes and principles of sentencing and weighed the enhancement factors "before imposing a sentence of confinement."). Thus, we conclude that the record supports the trial court's denial of alternative sentencing. Defendant is not entitled to relief.

## CONCLUSION

We conclude that the record supports the trial court's denial of alternative sentencing. The judgment of the trial court is affirmed.

s/ *Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE