IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 24, 2025 Session

## STATE OF TENNESSEE v. JOSEPH KADE ABBOTT

**Appeal from the Circuit Court for Blount County**
**No. C-29094, C-29488      Tammy M. Harrington, Judge**

_____

**No. E2024-01733-CCA-R3-CD**

_____

Defendant, Joseph Kade Abbott, pled guilty in two consolidated cases to three counts of sexual battery by an authority figure in exchange for concurrent six-year sentences, with the trial court to determine the manner of service. The trial court sentenced Defendant to six years' incarceration to be served at 100%. Defendant appeals, arguing that the trial court erred by ordering him to serve his sentence in confinement. Upon our review of the entire record, the briefs and oral arguments of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and MATTHEW J. WILSON, JJ., joined.

Jonathan D. Cooper and Richard L. Gaines, Knoxville, Tennessee, for the appellant, Joseph Kade Abbott.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Ryan K. Desmond, District Attorney General; and Chad Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

Defendant was charged on January 6, 2023, in the Blount County general sessions court with one count of sexual battery by an authority figure in Case No. 29094. On February 28, 2023, the Sevier County Grand Jury brought charges by presentment against Defendant for two counts of sexual battery by an authority figure in Case No. 29488 for

offenses involving the same type of conduct and the same victim. Defendant agreed to waive his right to a trial in Sevier County and to transfer Case No. 29488 to Blount County by interchange pursuant to Tennessee Code Annotated section 40-35-214. He then waived his preliminary hearing and pled guilty by information to the Blount County charge and to both Sevier County charges. Pursuant to the plea agreement, Defendant agreed to six-year concurrent sentences requiring him to register as a sex offender, and the manner of service was to be determined by the trial court.

The relevant facts, as presented by the State at the plea hearing, are as follows:

If called to trial in cases C-29094 and C-29488, the State of Tennessee would prove beyond a reasonable doubt that the Defendant during the months of May and June of 2022 was a teacher at Maryville Apostolic School located in Blount County, Tennessee. The Defendant was 25 years old at the time. The victim . . . was a 14-year-old student at the school at the time. In addition to being a teacher, the Defendant was also the victim's vocal coach. Based upon text messages recovered from the victim's phone, the victim's statements, and admissions made by the Defendant, the [S]tate would prove that the Defendant began to engage in a flirtatious relationship with the victim. This relationship progressed to the point where the Defendant would secretly meet the victim in empty classrooms where the two would often kiss. In case 29488, the State would specifically prove based upon statements by the victim, admissions by the Defendant, and corroborating video surveillance that between the dates of May the 23rd, 2022, and May the 26th of 2022, the victim was on a school trip to Gatlinburg staying at a hotel. The Defendant was a teacher chaperone on this trip and in a position of trust with supervisory and disciplinary authority over the victim. On at least two separate occasions [he] would take the victim to secluded areas of the hotel where the Defendant would kiss the victim as well as make unlawful sexual contact with the victim by kissing her, touching the victim's breasts, and kissing the victim's breasts. These incidents occurred in Sevier County, Tennessee.

And in case 29094 the State would specifically prove that during June of 2022 while the Defendant was a teacher and in a position of trust with supervisory and disciplinary authority over the victim, the Defendant would meet the victim in empty classrooms at Maryville Apostolic School where the Defendant would kiss the victim as well as making unlawful sexual contact with the victim by kissing her, touching the victim's breasts and kissing the victim's breasts. These incidents occurred in Blount County, Tennessee.

On October 30, 2024, the trial court conducted a sentencing hearing.  Defendant's presence report was admitted into evidence under seal, and the victim and her parents read their victim impact statements, noting that the crimes occurred during church, during school hours in Defendant's classroom, during the victim's voice lessons, and at a school-sponsored off-campus event where Defendant was a chaperone.  Defendant was the victim's teacher and vocal coach for two years and "violated her trust and her innocent body."  The victim's mother said that the victim was a twelve- to fourteen-year-old "naïve, impressionable child [who] was no match for the predator" who sexually abused her and sent her sexually explicit text messages while also taking on a "fatherly role," offering advice and controlling her.  Defendant's actions created a division in the church and in the victim's family, with people "taking sides" with either the victim or Defendant.  In addition to enduring the sexual abuse, the victim also lost her friends and school.

The victim's parents said the victim needed counseling for "psychological and emotional distress" as well as anxiety and depression.  The victim had been in continuous therapy since disclosing the abuse and had lost her trust in people, especially authority figures.  Because the abuse happened in church and during music lessons, "church [was] no longer a safe place for her," and Christian music triggered the victim's anxiety and agitation.  The victim's mother stated that the school had twice suspended Defendant for inappropriate communications with the victim, but no one informed the victim's family.  When Defendant returned from the suspensions, he continued communicating with and "grooming" the victim and then sexually abused her.

The victim stated that Defendant took away her voice and the trust she had with her mother by encouraging the victim to lie about the relationship and to keep it secret.  Defendant destroyed the way she looks at male teachers or any adult man and broke relationships she had built over five years of attendance at the school.

Defendant made an allocution expressing shame and sorrow for his actions and asking the victim and her family for forgiveness.  He apologized to family and friends whose trust he had broken.  He stated that he had accepted responsibility for his actions and had "refused to lead in worship, which [he] so loved or to step on a platform in any way."

The State argued that Defendant had a previous history of criminal behavior based on "months of kissing the victim . . . from his position as an authority figure" as well as other sexual contact.  The State noted that the offenses were committed at a school facility and at a school-sponsored field trip with other minor children present.  The State also pointed out that Defendant's psychosexual examination revealed that Defendant thought once the victim turned eighteen years old, she could be his girlfriend, and

ultimately his wife, indicating Defendant planned to continue to groom and abuse the victim. The psychosexual examination also revealed that Defendant believed minors could consent to sexual contact with an adult and that Defendant was a moderate level of risk to reoffend. When the STRONG-R assessment was completed one year after the psychosexual examination, Defendant indicated he had no remorse for his actions; he thought the relationship was acceptable because he and the victim were dating. He noted that he wanted to marry the victim when she turned eighteen. Based on Defendant's two years of grooming the victim, "kissing her, kissing her breasts, [and] placing her hand on his penis outside of his clothing," the State argued that Defendant's actions were "horrifying, shocking, reprehensible, and offensive," and requested Defendant serve the six-year sentence in confinement.

Defense counsel argued that Defendant should serve the sentence on probation, noting that Defendant had accepted responsibility from the time of his arrest and had agreed to the maximum sentence. Defendant had demonstrated compliance with pretrial conditions and had reported to probation in Blount County for almost two years while living in Mississippi. Defendant submitted multiple letters in support of his character, which he argued showed "a character that demonstrates what he did in 2022 was, in fact, an aberration." The STRONG-R assessment showed Defendant was a low risk to reoffend, and the psychosexual examination indicated a low to moderate risk to reoffend without sexual offender treatment. Defendant argued that a six-year sentence would have to be served at 100% and was thus disproportionate to the conduct of the offense.

The trial court stated that it had considered the evidence at the plea and the sentencing hearing, the presentence report, the principles of sentencing and arguments on sentencing alternatives, the nature of the criminal conduct, evidence regarding mitigating and enhancement factors, statistical information from the administrative office of the courts on sentencing, statements made by Defendant on his own behalf, and Defendant's potential for rehabilitation and treatment. The court noted that Defendant had agreed to a six-year sentence as a Range I offender with all counts to run concurrently. It also stated that the sentence carried a 100% release eligibility and that Defendant was required to register as a sex offender for life. Regarding the manner of service, the court noted that it had three available options: Defendant's sentence could be entirely probated, Defendant could be given split confinement of up to a year with the balance on probation, or Defendant could serve the full six years in confinement.

The trial court pointed out that the fact that Defendant was the victim's teacher was "egregious, shocking, and reprehensible," but explained that because the facts were elements of the offense, it could not consider them for sentencing. However, the court added that it could consider "the length of time that went into the inappropriate texting, the inappropriate kissing in a classroom, all the things that led up to - for a significant

period of time all the things that led up to the ultimate act" for which Defendant was convicted. Additionally, the court found it significant that Defendant was reprimanded for his texting and contact with the victim before he committed the sexual offenses against the victim, but that "a choice was made to continue with . . . the criminal act."

The trial court acknowledged that Defendant had no criminal history and had complied with the terms of his pretrial release. It noted that the STRONG-R assessment and psychosexual evaluations were "somewhat favorable," placing Defendant at a low to moderate risk of reoffending. However, it added that "low-to-moderate risk is still risk." Additionally, the court weighed "extremely heavily" the need to deter others in like positions from committing similar offenses. The court considered the fact that the sexual batteries occurred on school premises and at a school-sponsored event to be highly relevant to both deterrence and the depreciation of the seriousness of the offense.

The trial court concluded by weighing the factors it considered in determining whether to grant or deny probation:

> I have a defendant sitting before me that has complied with pretrial release, that has somewhat favorable . . . assessments. But weighing that against the seriousness of the offense, the weight of providing an effective deterrent. I can say with a hundred percent surety everybody loses . . . .
>
> I think that after I go through the entire analysis that the months, the contact, the opportunity to have been faced with stopping and continuing, the position, all those it's just hard to overcome, and I cannot in good faith depreciate the seriousness of the sexual battery by a teacher at a school, at a school function after months of inappropriate relationship. It just weighs too heavy.

The trial court denied Defendant's request for probation and ordered Defendant to serve his six-year sentence in confinement. It is from this order that Defendant now appeals.

## Analysis

Defendant argues that the trial court abused its discretion by ordering him to serve his full six-year sentence in confinement because it denied probation solely based on the seriousness of the offense. He also claims that his sentence is disproportionate to his conduct. The State contends that the record fully supports the trial court's sentencing determination. We agree with the State.

- 5 -

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors. *State v. Bise*, 380 S.W.3d 682, 709-10 (Tenn. 2012). The resulting sentence will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* This standard of review applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016); T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). A standard offender convicted of a Class C, D, or E felony is considered a favorable candidate for alternative sentencing, including probation, absent evidence to the contrary. *Id.* § 40-35-102(6)(A). Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.
(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

*Id.* § 40-35-210(b).

Although the trial court must consider probation as an alternative sentence for eligible defendants, an eligible defendant is not automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant must

show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). In considering whether a defendant is a suitable candidate for probation, the trial court should look at "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). When considering a sentence of confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed" and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), (4).

A trial court must place its reasoning for imposing a specific sentence into the record to allow for appellate review, but "there is no requirement that such reasoning be particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706. A trial court's denial of probation "will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014); *see* T.C.A. § 40-35-210(b)(1)-(7). In some cases, a trial court may deny probation solely on deterrence grounds or on the seriousness of the offense. *See State v. Nelson*, No. M2023-00176-CCA-R3-CD, 2024 WL 1192985, at *18 (Tenn. Crim. App. Mar. 20, 2024), *no perm. app. filed*. However, the court is not required to make additional findings where neither is the sole basis for the decision to order confinement. *Id.*

Here, Defendant pled guilty to three Class C felonies and agreed to six-year concurrent sentences, making him eligible for probation. *See* T.C.A. § 40-35-112(a)(3); *State v. Langston*, 708 S.W.2d 830, 832-33 (Tenn. 1986). Additionally, sexual battery by an authority figure is not explicitly excluded by Tennessee Code Annotated section 40-35-303(a). Defendant was considered a favorable candidate for probation because he was convicted of a Class C felony. T.C.A. § 40-35-102(6).

Defendant argues that the trial court erred in denying probation based solely on the seriousness of the offenses, noting that in such an instance "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006). However, that is not the case here. The trial court weighed the applicable factors, acknowledging Defendant's lack of criminal history, his compliance with the terms of his pretrial release, and his "somewhat favorable" assessments. However, it stated that "a sexual battery by an authority figure if that authority figure is a teacher is as serious as it can be for a C felony." Additionally, the court, noting the need for effective deterrence said, "It's not okay for a teacher to commit a sexual battery on a child, on a student . . . and that needs to be known within this community, within this state." The court also considered the fact that Defendant's inappropriate communications with the victim via text messages had been addressed by the school, yet Defendant not only continued the communications, but made a choice to escalate his behavior to sexual battery.

The court remarked that the decision to grant or deny probation was "extremely difficult." Still, it ultimately found that the seriousness of the offenses and the need for deterrence outweighed any factors favoring probation. Because the seriousness of the offenses was not the sole basis of the trial court's decision to deny probation, the *Trotter* standard does not apply. *See Trent*, 533 S.W.3d at 293-94; *see also State v. Harrison*, No. W2024-00869-CCA-R3-CD, 2025 WL 593109, at *3 (Tenn. Crim. App. Feb. 24, 2025), (finding that the "trial court did not solely rely upon the need to avoid depreciating the seriousness of the offense in its determination to deny probation as it clearly weighed the facts and circumstances of the offense" and applied the purposes and principles of sentencing and weighed additional factors "before imposing a sentence of confinement."), *no perm app filed*.

The record reflects that the trial court considered the appropriate factors in determining the manner of service for Defendant's convictions and made appropriate findings of fact in support of its decision. The trial court did not abuse its discretion. Defendant is not entitled to relief.

**CONCLUSION**

For the foregoing reasons, the judgments of the trial court are affirmed.

s/ *Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE